The EASTON UTILITIES COMMIS-
SION, Petitioner,

v.

ATOMIC ENERGY COMMISSION and
United States of America,
Respondents,

Philadelphia Electric Co. et al.,
Intervenors.

No. 22184.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 9, 1969.

Reargued June 26, 1969.

Decided Feb. 10, 1970.

Mr. Spencer W. Reeder, St. Michaels, Md., for petitioner.

Mr. Marcus A. Rowden, Asst. Gen. Counsel, Atomic Energy Commission, with whom Messers. Charles M. Farbstein and William C. Parler, Attys., Atomic Energy Commission, were on the brief, for respondents. Messrs. Howard K. Shapar, Asst. Gen. Counsel, Thomas F. Engelhardt, Atty., Atomic Energy Commission, and Howard E. Shapiro, Atty., Dept. of Justice, also entered appearances for respondents.

Mr. Arvin E. Upton, Washington, D.C., with whom Messrs. Leonard M. Trosten and Eugene J. Bradley, Washington, D.C., were on the brief, for intervenors.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON and ROBB, Circuit Judges.

TAMM, Circuit Judge:

This court's order of April 2, 1969 consolidated this case with cases No. 21,706, Cities of Statesville v. AEC, and No. 21,844, Power Planning Comm. of the Municipal Elec. Ass'n of Massachusetts v. AEC, for en banc argument and consideration. By our opinion of December 5, 1969, we ruled upon the issues involved in the companion cases but reserved consideration of the present case for a separate opinion because of the existence herein of a problem not common to the other cases.

I

The petitioner before us, Easton Utilities Commission, is "authorized to engage in the distribution of electric energy" (Brief for Petitioner at 5) and presently generates all the power that it distributes and sells within the municipality of Easton and its environs. It is not a customer of any of the intervenors nor is it a competitor or in any other way associated with any of those parties. It has, however, been instructed by the Maryland Public Service Commission to study " 'the effect on its service and on its economy of operation of effecting an interconnection with another electric generating system' " (Tr. 2608).

The intervenors in this proceeding, Philadelphia Electric Company, Public Service Electric and Gas Company, Delmarva Power and Light Company, and Atlantic City Electric Company, are utility companies operating in the Pennsylvania, New Jersey, Maryland interstate power interconnection known as the P.J.M. Pool.

The respondent Atomic Energy Commission (hereinafter "Commission") is the government agency established by Congress (42 U.S.C. §§ 2011–2296 (1964)) to control the utilization of nuclear power including the granting, suspending, revoking or amending of any license or construction permit encompassing atomic energy as a source of fuel or power.

II

On February 10, 1967, intervenor Philadelphia Electric Company, acting on its own behalf and as a representative of the other three intervenors herein, filed an application with the Atomic Energy Commission for licenses to construct, and later to operate, two nuclear reactors to be located at the Peach Bottom Atomic Power Station of the Philadelphia Company in York, Pennsylvania. The application was filed pursuant to section 104(b) of the Atomic Energy

Act, 42 U.S.C. § 2134(b) (1964), which authorizes the Commission to issue licenses for, *inter alia*, "utilization * * * facilities involved in the conduct of research and development activities leading to the demonstration of the practical value of such facilities for industrial or commercial purposes." The proposed reactors are to be singlecycle, forced circulation, boiling water reactors, each having an initial power rating of 3295 thermal megawatts (1065 electric megawatts) and a somewhat higher ultimate expected power level. The proposed facilities would be owned by all four intervenors as tenants in common with specified undivided interests, and these participants would use the facilities for the generation and ultimate sale of electricity.

The application, upon review by the regulatory staff of the Commission, was found to meet all requirements for the issuance of construction permits, specifically the standards of the Act as implemented by the Commission's regulations relating to the public health and safety, common defense and security (Tr. 2565–2566).

On November 1, 1967, following, of course, the review outlined above, the Commission issued a notice of hearing, which was published in the Federal Register on November 3, 1967, 32 Fed.Reg. 15,403. The notice advised that a public hearing would be held to consider the application for provisional construction permits on December 7, 1967, at a specified location contiguous to the site of the proposed facilities. The notice described the issues to be considered and initially decided by an Atomic Safety and Licensing Board under 42 U.S.C. § 2241 (1964), as a basis for the ultimate determination of whether provisional construction permits should be granted. Included in the notice of hearing were the requirements for leave to intervene as established by the Commission's Rules of Practice, 10 C.F.R. § 2.714 (1969). The notice also stated affirmatively that petitions to intervene "must be received" by the Commission "not la-

ter than November 16, 1967" and warned that "a petition for leave to intervene, which is not timely filed will be denied unless the petitioner shows good cause for failure to file it on time." (32 Fed.Reg. at 15,404.)

On November 16, 1967, the City of Dover, Delaware, acting in the capacity of a municipal customer of one of the applicants, filed a petition to intervene in the proceedings. By its petition the City of Dover challenged the authority of the Commission to grant the licenses applied for by Philadelphia Electric Company under the provisions of section 104(b) of the Act. Pursuant to a memorandum and order issued by the Commission which stated that the Commission considered a grant of intervention appropriate, the Board by an order dated December 6, 1967, granted intervention to the City of Dover.

At the hearing conducted by the Board on December 7 and 8, 1967, the City of Dover participated and presented its case challenging the Commission's jurisdiction under section 104(b). The hearing was devoted both to the safety and national security issues specified for hearing as well as the question of licensability of the projects under the provisions of section 104(b).

The Safety and Licensing Board on January 29, 1968, rendered its initial decision in which it ordered the issuance of the provisional permits to the applicants permitting the undertaking of the project construction. The findings of the Board were favorable to the applicants on all issues heard including, of course, the propriety of the license issuance under section 104(b). Pursuant to 10 C.F.R. § 2.764 the initial decision was made immediately effective, subject to review by the Commission, and on January 31, 1968, the provisional construction permits were issued and the construction of the reactors was thereafter undertaken.

Still contending that the Commission lacked jurisdiction to license the reactors under section 104(b) of the Act, the City of Dover filed exceptions to the ini-

tial decision, arguing in substance that since the facilities were to be sold by the manufacturer and bought by the applicants for use in the normal course of business, and without government subsidy, the project was without the authorization of section 104(b).

On June 5, 1968, the Commission denied the City of Dover's exceptions. Relying upon its own earlier ruling in the Matter of Duke Power Company, AEC Docket Nos. 50–269, 50–270, 50–287, the Commission held that a section 104(b) licensing procedure was proper upon the facts herein involved. The City of Dover did not file a petition for reconsideration, nor did it seek court review (Tr. 2613–2614).

Now, and for the first time, our present petitioner appears upon the record. On June 17, 1968, Easton Utilities Commission filed a petition for leave to intervene and a petition for reconsideration of the Commission's decision of June 5, 1968. Predicating its action upon the representation that it was satisfied with the City of Dover's representation of its interests until Dover elected neither to file a petition for reconsideration nor to seek court review, Easton renewed the contention that the licensing of these projects under section 104(b) was in violation of the Congressional limitations imposed by that section. Easton's petition, narrating the possibility of its ultimately having to effect an interconnection with intervenor Delmarva, and asserting that it had sought and been refused the right "to contract for its fair share of the capacity and energy entitlement" of the proposed project (Tr. 2609), alleged that it was an aggrieved party because the construction of the Peach Bottom units would affect the future economy of Easton's power supply.

The Commission on September 6, 1968, issued a memorandum and order denying both of Easton's petitions. Contained therein were the Commis-

sion's reasons and reasoning for its action (Tr. 2648–50) including the determination, as to the intervention petition, that it was not only untimely but also lacked acceptable justification for its late filing. As to the petition for reconsideration, the Commission concluded that under its rules (10 C.F.R. § 2.-771(a) (1969)) such a proceeding may be filed only by a party to the proceeding and that Easton was not, nor was it entitled to become, such a party. The Commission also pointed out that aside from the procedural defects, Easton's petition for reconsideration contained no substantive matter which had not already been considered and passed upon in the Commission's final decision of June 5, 1968.

Thereafter, on September 16, 1968, Easton filed a petition for reconsideration of the Commission's order of September 6, which petition the Commission denied on October 14, 1968. The petition to review in this court followed.

### III

At the threshold of this case we encounter, then, the basic question of whether the Commission properly denied the petitions of Easton to intervene in the licensing proceeding, and for reconsideration of the Commission's decision of June 5, 1968.[1] We point out that Easton's attempted entry into the administrative proceeding was seven months after November 16, 1967, the final date established by the published notice of hearing as the closing time for such petitions. It followed by more than six months the termination of the Board hearing, by almost five months the initial Board decision and the issuance of the provisional construction permits. Easton's petitions were also subsequent to the exceptions filed by the City of Dover to the initial decision and of course, subsequent to the Commission's decision of June 5, 1968.

1. We are of course not here discussing any issue with respect to intervention when a hearing is noticed on the consideration of the application for a license to operate the facility.

■ Our review of the record satisfies us that the Commission's procedural steps from February 10, 1967 to June 5, 1968, were in complete accord with relevant statutes and the Commission's Rules of Practice (10 C.F.R. Part 2). Notice of the hearing, required by section 189(a) of the Act, was properly published in the Federal Register, 32 Fed.Reg. 15,403 (1967). Dover's petition for intervention, which met the published conditions, was granted, the hearing was held, an initial decision was issued. Dover's exceptions thereto were considered by the Commission, and then the final decision was issued.

■ Section 2.714 of the 1968 edition of the Commission's Rules of Practice provided in part:

(a) Any person whose interest may be affected by a proceeding and who desires to participate as a party shall file a written petition under oath or affirmation for leave to intervene not later than seven (7) days before the commencement of the hearing or within such other time as may be specified in the notice or as permitted by the presiding officer. The petition shall set forth the interest of the petitioner in the proceeding, how that interest may be affected by Commission action, and the contentions of the petitioner. *A petition for leave to intervene which is not timely filed will be dismissed unless the petitioner shows good cause for failure to file it on time.* (Emphasis added.)

The rulemaking authority of the Commission is specifically conferred by Congress: the Commission is empowered to "make, promulgate, issue, rescind, and amend such rules and regulations as may be necessary to carry out the purposes" of the Act. 42 U.S.C. § 2201(p) (1964). We find nothing whatsoever in the record which in any way challenges the reasonableness, the necessity for, or the propriety of this Commission rule. We are confronted only with the Commission's utilization of this rule under the factual situation in this case. Easton's claim of justification for its tardy

action in appearing in the case is that it relied upon Dover's participation in the proceeding, and reached its decision only when Dover decided not to appeal the Commission's order. We note at this point that the record establishes no evidence of any relationship between Dover and Easton—they stand as strangers to each other. In fact, the Commission pointed out that "[n]othing in the record of this proceeding gives any indication that the City of Dover was acting in a representative capacity, either as regards Easton or others; and no basis for such a relationship between Dover and Easton is set forth in the latter's intervention petition" (Tr. 2649).

We have long and frequently passed upon the limitations of judicial review which we exercise in agency cases involving failure of potential or possible parties to fully exercise, utilize and protect their rights to participate in administrative procedures. More than thirty years ago, concerned with the problem of what must be done by "an interested person to act affirmatively to protect himself" in agency proceedings, we said that "[s]uch a person should not be entitled to sit back and wait until all interested persons who do so act have been heard, and then complain that he has not been properly treated. To permit such a person to stand aside and speculate on the outcome * * * and then permit the whole matter to be reopened in his behalf, would create an impossible situation." Red River Broadcasting Co. v. FCC, 69 App.D.C. 1, 5–6, 98 F.2d 282, 286–287, cert. denied, 305 U.S. 625, 59 S.Ct. 86, 83 L.Ed. 400 (1938).

Three years later Judge Vinson, speaking for this court, defined the judicial logic that must serve as a basis for our approach to this problem:

There must be an end to determinations and redeterminations. The issue was crystallized *and the record could have been made before the Commission's action.* * * *

* * * Under these circumstances to allow the appellant to allege as an error of law a situation that it took no

timely steps to correct by presenting its evidence in full would change its position from that of an interested party under the statute to that of a mere vigilante.

Colorado Radio Corp. v. FCC, 73 App.D.C. 225, 227–228, 118 F.2d 24, 26–27 (1941) (emphasis added). Judge Vinson then quoted with approval our observation in *Red River Broadcasting Co.* that " '[i]f, having such notice as it was entitled to have at an earlier stage of the proceeding, it neglected to avail itself of such an opportunity, it may thus have foreclosed itself from seeking further relief.' " We reiterated our basic doctrine in Coastal Bend Television Co. v. FCC, 98 U.S.App.D.C. 251, 255, 234 F.2d 686, 690 (1956). When we reached Valley Telecasting Co. v. FCC, 118 U.S. App.D.C. 410, 336 F.2d 914 (1964), we upheld the agency involved in declining to accept a non-party filing of a petition for reconsideration and its adherence to a requirement that "good cause" be established for justification of consideration of untimely intervention. *See also* Spanish International Broadcasting Co. v. FCC, 128 U.S.App.D.C. 93, 385 F.2d 615 (1967).

We do not find in statute or case law any ground for accepting the premise that proceedings before administrative agencies are to be constituted as endurance contests modeled after relay races in which the baton of proceeding is passed on successively from one legally exhausted contestant to a newly arriving legal stranger. We find such a scheme especially abhorrent in a situation where, as here, counsel for the expiring intervenor appears newly garbed as counsel for the successive contestant. The record before us discloses that counsel for present petitioner was co-counsel for the City of Dover during its entire participation in the proceeding before the Commission, that he personally participated, as counsel for Dover, in the examination of witnesses during the hear-

ings of December 7 and 8, 1967, and signed as co-counsel the exceptions of the City of Dover to the Initial Decision. His belated effort in behalf of a new client to enter and prolong the administrative proceedings does not commend itself as evidencing a recognition of the necessity for an "orderly conduct of public business." More from politeness than from conviction, we refrain from further comment on this aspect of the record.

## IV

■ Petitioner seeks to establish through section 6(a) of the Administrative Procedure Act (5 U.S.C. § 555 (Supp. IV 1965–68))[2] a legal basis for its claimed status to have affirmative action upon its initial pleading, *id est,* the petitions to intervene and for reconsideration filed on June 17, 1968. This statute, of course, establishes that "so far as the orderly conduct of public business permits, an interested person may appear before an agency" for the presentation, adjustment, or determination of an issue. We do not believe that the affirmative grant of a right to appear is blindly absolute, without regard to time of appearance, the status of the proceedings, the administrative avenues established by other statutes and agency rules for participation, or, most importantly, as "the orderly conduct of public business permits." In consideration of the record of the proceedings as we have set them out in Part II of this opinion and the case law as we have adopted it in Part III, we must hold that petitioner has no right established under the cited provision of the Administrative Procedure Act which was abrogated by the Commission's action upon its petitions to intervene and for reconsideration.

■ Similarly, we find no validity in petitioner's argument before us that section 189(b) of the Atomic Energy Act (42 U.S.C. § 2239(b) (1964)), which established a right of judicial review of any final orders issued by the Commis-

---

**2.** Cited in briefs as 5 U.S.C. § 1005(a), being the citation applicable prior to the 1966 amendment.

sion in section 2239 proceedings, when considered with the Administrative Procedure Act, somehow creates a legal status by the initiation of these court proceedings that establishes, apparently on a *nunc pro tunc* basis, a legal foundation giving vitality to petitioner's pleadings before the Commission. Intertwined with the above statutes, as we understand petitioner's presentation, are the provisions of Title 28 United States Code dealing with judicial review of orders of federal agencies (§§ 2341–2351 (Supp. IV 1965–68)). We think the short, direct answer to this argument is that those statutes relate to the rights of "any *party* aggrieved" by the agency action (28 U.S.C. § 2344 (Supp. IV 1965–68) (emphasis added)). Petitioner never became a party to the agency proceedings, for reasons heretofore enumerated, which reasons we have held to be completely valid.

Petitioner contends, however, that judicial precedent is found in both Pellegrino v. Nesbit, 203 F.2d 463, 37 A.L.R. 2d 1296 (9th Cir. 1953), and Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 144 F.2d 505, cert. denied, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1944), for the recognition of a petitioner, not a prior party to a proceeding, to enter those proceedings when earlier litigants drop their cudgel. We readily distinguish each case from our present one on the basis of the factual relationship existing between the initial parties and the later comer. Observing first that neither case involved intervention in an administrative proceeding but rather that both arose under and were governed by the Federal Rules of Civil Procedure, we recognize that in each case there existed a relationship, a nexus, a continuity of common interest, established by those records which just is not now before us. There was in each cited case, as the Commission decision points out, "a clear basis for a representational relationship between the person seeking intervention and the party he sought to replace in the

proceeding" (Tr. 2649). We have heretofore pointed out the nonexistence of any established relationship between Dover and Easton.

## V

Finally, we must evaluate petitioner's contention that the Commission waived the time limitations imposed in its rules by considering its motions on their merits. The record does establish that the Commission's Memorandum and Order of September 6, 1968 (Tr. 2645–2650) enumerated the essential elements of Easton's petitions, as it also set forth the grounds relied upon by both the applicants (now our intervenors) and the Commission's staff for opposing both petitions. We do not consider such actions as constituting either an evaluation or a judgment upon these several items. The Commission's reference to its earlier action in this case, and its comparison therewith of an earlier and similar case, are addressed to a restatement of its conviction of the correctness of its ruling upon the issues raised by intervenor City of Dover. Its conclusion that petitioner Easton, not having been a "party" to the earlier proceedings, is not under Commission rules entitled to become one by its June 17 petitions is a positive and affirmative ruling upon those petitions. The observation that the petition for reconsideration is a mere reiteration of Dover's earlier exceptions does not, we hold, constitute any consideration of the merits of petitioner's pleadings, but is rather a recital of the identical points previously raised by Dover and ruled upon by the Commission. We hold consequently that there has been no waiver by the Commission of the time for filing as established by the agency rules and the record in this case.

The Commission's action in refusing to permit petitioner's entrance into this case is

Affirmed.