**KIRO, INC., Petitioner,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**No. 23884.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1970.

Decided Nov. 20, 1970.

------

Mr. Leon T. Knauer, Washington, D. C., for petitioner.

Mr. D. Biard MacGuineas, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, John H. Conlin, Associate General Counsel, and Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, were on the brief, for respondents. Mr. Edward J. Kuhlmann, Counsel, Federal Communications Commission, also entered an appearance for respondents.

Before TAMM and WILKEY, Circuit Judges, and CHRISTENSEN,* U. S. District Judge, District of Utah.

* Sitting by designation pursuant to 28 U.S. C. § 292(c).

1. 20 F.C.C.2d 918 (1969).

2. 47 C.F.R. § 74.1103 (1970).

3. The Fourth Circuit has succinctly described the priority system for providing program exclusivity protection as follows:

> Towards the regulation of CATV, the Commission has established a predicted scope of each station. These

**WILKEY, Circuit Judge:**

This case is brought before us by KIRO, Inc., on a petition for review of the decision and order of the Federal Communications Commission in In re Everett Cablevision, Inc.[1] We remand to the Federal Communications Commission for a reconsideration of its decision and order in light of this opinion.

## I. *Proceedings Before the Commission*

KIRO, Inc., operates KIRO–TV, Seattle, Washington, an affiliate of the CBS network. Intervenor Everett Cablevision, Inc., operates a community antenna television system with 13,856 subscribers in Everett, Washington. Everett's CATV system carries signals from four television stations in Seattle, two in Tacoma, one in Bellingham, two in Vancouver, British Columbia, and one in Victoria, British Columbia. Two are CBS affiliates: Petitioner KIRO–TV, and the Bellingham station, KVOS–TV, not a party herein. In November 1966 KIRO requested Everett to afford KIRO–TV program exclusivity protection in transmissions over the Everett Cablevision CATV system. Under FCC rules[2] a TV station is entitled to exclusivity if it projects a stronger signal over the CATV area than any other station carrying the identical program. In this case KIRO–TV in Seattle was asserting program exclusivity against KVOS–TV in Bellingham, since KVOS–TV was also a CBS affiliate. KIRO asserted that it placed a "principal community contour" over Everett, whereas KVOS–TV barely placed a "Grade A contour" over the city.[3] Intervenor Everett rejected the

predictions, three in number, are designated as contours. Expressed in terms of field intensities, they are in order of priority as follows: (1) Principal community contour, which "means the signal contour, which a television station is required to place over its entire principal community," 47 C.F.R. 74.1103(c). This contour encompasses an area with a predicted reception acceptable to the median observer at 90% of the receiver locations 90% of the time. (2) Grade A contour de-

KIRO request, asserting that the signals of KVOS and KIRO were both Grade A in Everett and therefore of equal priority. In December 1966 KIRO requested a ruling from the Commission.

In March 1967 KVOS—not Everett—opposed the KIRO claim on the ground that KIRO did not place a "principal community contour" over Everett and that both KIRO and KVOS signals were "Grade A contour." Two and a half years later, 25 September 1969, a Commission opinion and order upheld the KIRO claim that it did place a predicted "principal community contour" over Everett, that KVOS–TV placed a "Grade A" signal over the city (as both KIRO and KVOS had asserted), and that therefore KIRO was entitled to program exclusivity protection over Everett's CATV network.[4]

On 27 October 1969 Everett—not KVOS—filed a petition for reconsideration with the Commission, alleging that

> notes a field in which the predicted service is 70% and 90%, respectively, and (3) Grade B contour demarks an area with a quality of service acceptable at 50% of the locations 90% of the time. See 47 C.F.R. §§ 21.710(c), 73.683(a) and 73.685(a).
>
> Abridged, the particular rule under consideration requires a CATV system carrying the signals of several stations to exclude from its transmissions, on request of a station of higher priority, the program of a station having a lower contour grade, when the superior one is emitting the same production on the same day.
> Wheeling Antenna Co. v. United States, 391 F.2d 179, 181 (4th Cir. 1968).

4. Everett Cablevision, Inc., 19 F.C.C.2d 831 (1969).

5. The Act, 47 U.S.C. § 405 and the Commission's regulations, 47 C.F.R. § 1.106 (f) (1970), require that a petition for reconsideration be filed within 30 days of the date of release of the action of which reconsideration is sought. Here, the Commission's order was released on 25 September 1969 and, since the thirtieth day therefrom, 25 October 1969, fell on a Saturday, the Commission apparently determined that filing of the petition on the following Monday, 27 October 1969, was acceptable.

KVOS–TV placed a predicted "principal community contour" over Everett, an allegation that had not been made by KVOS–TV itself in the three years the KIRO petition for program exclusivity had been before the Commission. Everett, although as operator of the CATV system it had been the party to whom KIRO had addressed its initial request for program exclusivity, had not participated in the subsequent proceeding before the Commission, and had filed no pleadings therein until its petition for reconsideration of the Commission's decision on the very last day available.[5] As grounds for its petition Everett alleged that one of its engineers had discovered a map dated June 1956 showing the signal contour of KVOS, that this map was a copy of the official contour map of KVOS in the Commission's files, and that this showed KVOS placed a predicted principal community contour over Everett.[6]

6. Contour maps, plotted in a manner set forth in the Commission rules, 47 C.F.R. § 73.684, are submitted by applicants for television station construction permits. If the applications are approved, the maps showing the stations' predicted contours, see 47 C.F.R. §§ 73.686(a), 73.685(a), become part of the stations' official license files. According to the Commission's brief, when changes or modifications are made in a station's license, new maps are submitted, but only when the changes would produce predicted contours different from those on the original map. These rules governing the determination of predicted contours have recently been amended by the Commission. In the proceeding we are directing on remand, the Commission may choose to require a redetermination of the predicted contours of KIRO and KVOS pursuant to the amended regulations if, under all the circumstances it deems such a course to be desirable. See 35 Fed.Reg. 5690, 5692 (3 April 1970) where with respect to the applicability of the new rules, the Commission stated:

> The new rules will apply to all cases designated for hearing in which the record has not been closed. In cases where the record has been closed, the Commission will give consideration in

On 9 December 1969 the Commission granted KVOS authority to broadcast with power of 229 kilowatts; prior thereto KVOS had been operating with 214 kilowatts. On the following day the Commission adopted its decision and opinion, which was released on 17 December 1969. This opinion reversed the initial decision granting KIRO program exclusivity over the Everett CATV network, basing its change of position on the ground that KVOS did indeed place a predicted principal community contour over Everett, and therefore KIRO was not entitled to exclusivity versus KVOS. KIRO petitions for review of this FCC decision on reconsideration.

## II. *Administrative Finality*

■ At the outset we note that the action of the Commission in this case certainly jettisoned any idea of administrative finality as a guiding principle. We see no reason why Intervenor Everett Cablevision, Inc., could not and should not have been in the FCC proceeding from the beginning, if it believed it had any interest calling for protection.[7] If on this appeal Petitioner KIRO had been able to make out a stronger case of ultimate injustice to it by the Commission's extraordinary action, this court would be disposed to reverse and reinstate the Commission's original decision of September 1969 on this ground alone.

As Commissioner Cox, joined by two other Commissioners, said in his dissent:

Everett Cablevision sat out the 3-year proceeding in which KIRO–TV and KVOS–TV litigated their respective rights on its system. Not liking the Commission's resolution of the matter, it now seeks to enter the case for the first time, basing its claims on a map dated June 1956 which it alleges came into its possession from sources unknown and which it says appears to be the official predicted principal community contour map for KVOS–TV. * * * To allow Everett Cablevision to intervene at this point, in my judgment, is to countenance an abuse of our processes.[8]

In its recent Community Service, Inc., Frankfort, Kentucky, and Consolidated Television Cable Co.[9] opinion and order handed down 8 July 1970, the Commission demonstrated that it can and does achieve administrative finality when it so desires. This court has also had occasion recently to observe:

We do not find in statute or case law any ground for accepting the premise that proceedings before administrative agencies are to be constituted as endurance contests modeled after relay races in which the baton of proceeding is passed on successively from one legally exhausted contestant to a newly arriving legal stranger.[10]

It is highly likely that what the Commission permitted Everett to do here it would not under its own rules have per-

---

each case, on its own motion or on the basis of pleadings duly filed by the parties to the proceeding, as to whether a further showing under the new rule should be required.

7. Indeed, while under the statute, 47 U.S.C. § 405, and the regulation, 47 C.F.R. § 1.106(b), a petition for reconsideration may be filed by any person aggrieved by the Commission's action, the regulations explicitly require that:

if the petition is filed by a person who is not a party to the proceeding, it shall * * * show good reason why

it was not possible for him to participate in the earlier stages of the proceeding.

Commissioner Cox, in his dissent, clearly thought that such "good reason" had not been shown, and for the reasons stated in the text we are inclined to agree.

8. Everett Cablevision, Inc., 20 F.C.C.2d 918, 919 (1969).

9. 24 F.C.C.2d 153 (1970).

10. Easton Utilities Comm. v. Atomic Energy Comm., 137 U.S.App.D.C. 359, 364, 424 F.2d 847, 852 (1970).

mitted KVOS, *i. e.*, to file this newly discovered map of its own transmittal power after having had its opportunity for two and one-half years to do so.[11] The Commission attempted to justify its consideration of the KVOS map on rehearing by maintaining that it was merely taking "official notice" of the contents of its own files and was not receiving any new evidence. We are unable to perceive the significance of such a distinction. The map, whatever its source, whether officially noticed or not, was evidence, and, in the context of this case, it was new evidence. In permitting Everett to arrive as a newcomer three years late and to do what the previous contestant could not have done, the Commission clearly erred. At oral argument this was sought to be justified only on the grounds that the Commission had completely erred in its original decision favoring KIRO, and on the basis of subsequently ascertained facts now was attempting to make what it believes to be a correct and fair decision. Whether this subsequent decision should stand, whether KIRO has been hurt by this admittedly extraordinary procedure, we now examine.

### III.  *Administrative Due Process*

The filing of this newly discovered June 1956 map of KVOS–TV Station's predicted contours was the pretext by which Everett stuck its nose into the FCC tent at the last minute. As we have indicated, Everett could have and, if it deemed its interest at stake, should have participated in the proceeding from the start. The Commission welcomed both the old map and Everett, although it is not clear that the Commission, once it had reopened the proceeding on the basis of the newly discovered map, actually relied upon this at all.

The Commission's counsel argued the case as if the Commission had relied on the 1956 map confirmed by another map and engineering studies; the Commission's opinion on reconsideration is couched in language susceptible to more than one interpretation. The Commission stated:

> KVOS–TV's contour map and its entire engineering records have been examined in view of Everett Cablevision's claim, and the Commission finds that KVOS–TV's predicted principal community contour encompasses part of Everett. (Footnote indicated.) [12]

On this alone it would appear that the 1956 map and the engineering record history were the basis of the Commission's decision, but the footnote may be intended to convey a different and more accurate thought. The Commission's footnote says:

> The determination of the KVOS–TV principal community contour in the direction of Everett, Washington, was based on the transmitting antenna height above average terrain of 2370 feet and the effective radiated power of 229 kilowatts. *The map employed to establish* KVOS's transmitting site and the Everett city limits was the Sectional Aeronautical Chart—Bellingham, Edition of October 1954.[13]

When Everett filed this newly discovered old map, it admitted that the map "is difficult to read in that it is lacking in clarity." Commissioner Cox in his dissent deprecated the map on another ground:

> In any event the mysterious map is worthless because KVOS–TV has modified its license, either increasing or decreasing power, four times since June 1956. Thus it can no longer be the subject of valid, official notice for any current purpose. Indeed, the majority are not here proceeding on the basis of the map at all. Instead, they are relying on a calculation—never

11. *See* 47 C.F.R. § 1.106(c).

12. Everett Cablevision, Inc., 20 F.C.C.2d 918 (1970).

13. *Id.*, n. 2.

submitted for KIRO–TV's comments —made by our chief engineer.[14]

It appears that the engineering calculation as to the predicted contour line of coverage is based on three factors: (1) terrain, (2) transmission tower height, and (3) transmittal power. The terrain presumably remained the same, whether the Commission could read the 1956 map or not, whether it based its engineering calculations on the map which served to reopen the proceeding or whether it resorted to the 1954 map cited in its footnote. The KVOS tower transmitter height was originally put at 2411.7 feet,[15] but early in the station's history was reduced to 2370 feet, which it remained in December 1969. The KVOS transmittal power increase from 214 kilowatts to 229 kilowatts,[16] the day before the Commission decision on reconsideration was made, appears somewhat timely but we are assured by Commission counsel that this additional increment is so minuscule that it would make no difference in the engineering calculation of the predicted contour of KVOS.

The Commission asserts that the determination of the predicted signal of a TV station is really an engineering calculation by a well-accepted formula, not subject to valid dispute, and that is what was done in this case. The Commission urges that this engineering calculation was subject to verification by KIRO, if it so desired, and it does seem that KIRO in its brief here has not asserted that this December 1969 calculation of KVOS's predicted contour is actually wrong. Rather, KIRO appears to predicate this appeal on its right to have the September 1969 decision of the Commission reinstated, while the Commission argues that once having discovered the true facts as to the comparative coverage of KIRO and KVOS, it was obli-

gated to make its ruling on the facts it knew to be true in December 1969.

Thus it is not clear that KIRO has received less from the Commission than full and accurate justice, but it is clear that the procedure by which the determination of the Commission was reached was not a due process procedure that inspires confidence that full and accurate justice was in fact rendered.

### IV. Alternatives of Relief

Having thus expressed our disapproval of the Commission's allowing the last-minute intervention of Everett in the first place, and our dissatisfaction with the conduct of the proceedings by the Commission thereafter, and our present uncertainty on the state of this record thus made as to the essential justice of the results reached, we now consider the proper path to take in fairness to all parties involved.

We are urged by Petitioner KIRO to reinstate the Commission's original order of September 1969, which gave KIRO program exclusivity over Everett's CATV system. But the Commission assures us that on all the facts as presently known, this is clearly wrong, because both KIRO and KVOS have signals of equal coverage over Everett and KIRO is entitled to no priority. The Commission's initial determination was in error because it was based on erroneous assumptions of facts since disproved. Thus to grant KIRO's petition might do a substantial injustice to KVOS, although, as we indicated above, the public interest may demand a principle of administrative finality no matter what the result to private litigants.

On the other hand, we are loath to approve the Commission order on reconsideration denying KIRO's claim to pro-

14. *Id.*, at 919.

15. The legend on the 1956 KVOS contour map, filed by Everett in support of its petition for reconsideration, and included in the record in this review proceeding, listed the variables upon which the map was plotted as: Effective Radiated Power (ERP), 230 kw; antenna height, 2,411.7 feet.

16. KVOS's authorized power had apparently been reduced to 214 kw at some time after 1956, but before commencement of proceedings in the instant case.

gram exclusivity, because it is clear that KIRO has not had a proper opportunity to challenge the bases of the Commission's determination that—to the amazement of all parties concerned—KVOS indeed has a signal strength over Everett equal to a predicted principal community contour. To let the Commission's December 1969 order on reconsideration stand would be to give KVOS and Everett the benefit of clearly improper administrative procedure.

We therefore set aside the December 1969 Commission order on reconsideration in this proceeding, and direct that the Federal Communications Commission reopen the proceedings to afford KIRO a chance to submit all relevant evidence [17] and to test by usual hearing procedures the data relied upon by the Commission in its order on reconsideration. In such proceeding both Everett and KVOS likewise should have an opportunity to present any relevant data. After this the Commission can then make such determination of this matter as its judgment on all the facts calls for.

---

17. KIRO has asserted that its right under 47 U.S.C. § 405 and 47 C.F.R. § 1.106(k) (3), itself to ask for reconsideration of the Commission's decision on Everett's petition for reconsideration, is an inadequate remedy on the facts of this case, since, under the rules of the Commission, a reconsideration petition is circumscribed in scope to matters dealt with in the prior proceeding. Whether or not this is so, we believe that in view of the irregularity of the Commission's actions in this case, justice requires that the parties have the opportunity to ventilate fully the issues involved, and to build a record free of the substantial gaps in information which have confronted us here.