**OUTWARD CONTINENTAL NORTH PA-CIFIC FREIGHT CONFERENCE and Its Members, Petitioners,**

v.

**FEDERAL MARITIME COMMISSION and United States of America, Respondents.**

**No. 21022.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 15, 1967.

Decided Oct. 26, 1967.

Mr. John P. Meade, Washington, D. C., for petitioners. Mr. Robert L. Harmon, Chicago, Ill., also entered an appearance for petitioners.

Mr. Joseph F. Kelly, Jr., Atty., Federal Maritime Commission, with whom Asst. Atty. Gen. Turner, Messrs. James L. Pimper, Gen. Counsel, Robert N. Katz, Sol., Federal Maritime Commission, Walter H. Mayo III, Atty., Federal Maritime Commission, at the time the brief was filed, and Irwin A. Seibel, Atty., Dept. of Justice, were on the brief, for respondents.

Before BURGER, McGOWAN and LEVENTHAL, Circuit Judges.

PER CURIAM:

This is a petition for review of an order of the Federal Maritime Commission disapproving, under Section 15 of the Shipping Act (46 U.S.C. § 801 *et seq.*), petitioners' ocean shipping conference agreement for their failure to comply with three General Orders of the Commission. Petitioners not only attack these Orders as beyond the rule-making authority of the Commission, but also challenge the power of the Commission to enforce them by withdrawing approval of the conference agreement. Many of petitioners' contentions we have already rejected in Pacific Coast European Conference v. Federal Maritime Commission, 126 U.S.App.D.C. 230, 376 F.2d 785 (1967); and, finding petitioners' other allegations to be without merit, we affirm the order of the Commission.

The General Orders 7, 9, and 14 involved in this dispute were issued by the Commission after extensive rule-making proceedings [1] in which petitioners participated fully. They were designed to implement the 1961 amendments to Section 15 of the Shipping Act, relevant portions of which are set out in the margin.[2] Petitioners neither sought review of these Orders in a federal court of appeals,[3] nor took any steps to comply with them. After petitioners had ignored

---

[1] Section 43, added to the Act in 1961, granted the Commission broad authority to "make such rules and regulations as may be necessary to carry out the provisions of this chapter." 46 U.S.C. § 841a (1964).

[2] The Commission shall by order, after notice and hearing, disapprove, cancel or modify any agreement, or any modification or cancellation thereof, whether or not previously approved by it, that it finds to be unjustly discriminatory or unfair as between carriers, shippers, exporters, importers, or ports, or between exporters from the United States and their foreign competitors, or to operate to the detriment of the commerce of the United States, or to be contrary to the public interest, or to be in violation of this chapter, and shall approve all other agreements, modifications, or cancellations. No such agreement shall be approved, nor shall continued approval be permitted for any agreement (1) between carriers not members of the same conference or conferences of carriers serving different trades that would otherwise be naturally competitive, unless in the case of agreements between carriers, each carrier, or in the case of agreements between conferences, each conference, retains the right of independent action, or (2) in respect to any conference agreement, which fails to provide reasonable and equal terms and conditions for admission and readmission to conference membership of other qualified carriers in the trade, or fails to provide that any member may withdraw from membership upon reasonable notice without penalty for such withdrawal.

"The Commission shall disapprove any such agreement, after notice and hearing, on a finding of inadequate policing of the obligations under it, or of failure or refusal to adopt and maintain reasonable procedures for promptly and fairly hearing and considering shippers' requests and complaints." 46 U.S.C. § 814 (1964).

[3] The Commission has argued persuasively that this petition, at least to the extent that it attacks the validity of the General Orders, is not timely. Under the Administrative Orders Review Act of 1950, now codified in 28 U.S.C. § 2341 *et seq.* (Supp. II, 1965–66), any party aggrieved by a final order of the Federal Maritime Commission may petition for review of the order in a federal court of appeals. The record in this case reveals that petitioners were active parties to the rule-making proceedings which preceded issuance of General Orders 7, 9, and 14, and that these Orders unmistakably "aggrieved" petitioners in precisely

several inquiries concerning this failure, the Commission issued an order to show cause why their agreement should not be disapproved for noncompliance with Section 15 and Orders 7, 9, and 14. Petitioners were permitted to submit affidavits and memoranda of law and to present oral argument, after which the Commission issued the disapproval order now before us.

In view of our decision in *Pacific Coast,* the validity of General Order 9 as an exercise of the Commission's broad rule-making authority is no longer subject to dispute in this court. That case established that the specifications of General Order 9 were "reasonably adapted to the accomplishment of the Congressional objective [in Section 15] of providing the shipping conference with freely swinging doors in respect of carrier membership."[4] 376 F.2d at 790. General Orders 7 and 14 were likewise intended to further other Congressional policies expressed in Section 15; and they also represent, at least in the particulars relevant to this case, permissible exercises of the Commission's authority to promulgate precise guides to compliance with the Shipping Act.[5]

General Order 7 is designed to facilitate the Commission's statutory obligation to disapprove any conference agreement on a "finding of inadequate polic-ing of the obligations under it." The Order's specifications—neither of which was met by petitioners—are that each agreement must include a provision describing the policing system used by the members, and that the conference must file with the Commission semi-annual reports describing the nature and disposition of any complaints received by the conference. General Order 14 was promulgated to aid the Commission in ensuring that no conference be approved unless it fulfills its statutory duty "to adopt and maintain reasonable procedures for promptly and fairly hearing and considering shippers' requests and complaints." Those requirements of Order 14 with which petitioners were found not to have complied were that the conference (1) file with the Commission and publish in its tariff a statement outlining the procedures for disposition of shippers' requests and complaints, (2) submit semi-annual reports to the Commission describing the nature and disposition of shippers' complaints, and (3) designate a resident representative in the United States with whom U.S. shippers may lodge their requests and complaints.

██ It is evident that these specifications were devised primarily to keep the Commission informed about the actual practices of the conferences.[6] Con-

---

those particulars which form the basis of the Commission's disapproval order. We suggested in *Pacific Coast* that those who have had the opportunity to challenge general rules should not later be heard to complain of their invalidity on grounds fully known to them at the time of issuance. Compare Functional Music, Inc. v. FCC, 107 U.S.App.D.C. 34, 274 F.2d 543 (1958), cert. denied, 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 81 (1959). We note that *Pacific Coast* was decided after the expiration of the 60 day period for filing a petition for review of General Orders 7, 9, and 14. Therefore, and because we accept the Commission's view of the merits, we do not rest our affirmance on this ground.

4. The Commission found that petitioners' agreement failed to comply with Order 9 in the following respects: (1) "just and reasonable cause" was an impermis-sible criterion for denial of admission to membership; (2) there was no provision for furnishing to a party expelled a detailed statement of the reasons therefor; (3) it failed to provide that no party could be expelled except for failure to abide by all the terms and conditions of the agreement. The first two of these specifications were also involved in *Pacific Coast;* the third is, of course, no less reasonable.

5. See Pacific Coast European Conference v. FMC, 126 U.S.App.D.C. 230, 376 F.2d 785, 789 (1967).

6. General Order 7 recites that it is intended "to aid the Commission in determining the existence and adequacy of self-policing systems, in accordance with the statutory objective." 46 C.F.R. § 528.1 (Supp.1967). Similarly, General Order 14 states: "The Commission deems it to be its responsibility to see to it that rate-

gress has entrusted to the Commission the task of ensuring compliance with the mandates of Section 15. Since diligent performance of this duty demands almost constant surveillance of conference activities, and since all of the information required by the Orders pertains directly to the statutory criteria, we cannot say that these Orders are in excess of the Commission's rule-making authority. Petitioners' most strenuous objections are directed not so much to the Commission's general power to inform itself as against the particular feature of Order 7 which requires the conference to adopt a full-fledged policing *system* and to incorporate it by amendment into the agreement. However, we think it a reasonable interpretation of the Congressional insistence upon adequate policing that the conference be able to point to some systematic and regular procedures for securing its members' adherence to the obligations of the agreement. Nor do we think the Commission exceeds its bounds in requiring that these procedures be described in a provision of the agreement.[7] Compulsory amendment of the agreement is a reasonable manner of ensuring that the conference has in fact adopted a policing system and that it is brought clearly to the Commission's attention.

■ Petitioners' argument continues, however, that even assuming the Com-

mission is empowered to promulgate such rules and to enforce them under another section of the Shipping Act,[8] it cannot withdraw approval of the agreement under Section 15 without first making a specific finding, after notice and hearing, that the actual operations of the Conference fail to conform to the statute. As it applies to General Order 9, this argument was considered and rejected in *Pacific Coast.* We there noted that "where the rule does not transgress the authority under which it is issued, it is still the statute which speaks." 376 F.2d ta 790. Admittedly the nexus between the statutory directive and General Order 7 is more attenuated. Order 9 defines certain "reasonable and equal terms and conditions for admission" whose inclusion in the agreement Section 15 makes a prerequisite to Commission approval; an agreement which does not include those provisions is *per se* in violation of the Act. While it is less obvious that a conference whose agreement does not contain a provision describing its policing system necessarily violates the statutory proscription of "inadequate policing," we think the Commission may be permitted to draw such an inference. The Commission can reasonably "find," without the necessity of an extended evidentiary hearing,[9] that any conference which refuses to adopt and communicate to the Commission an outline of its policing

---

making groups operating under approved Section 15 agreements have adopted and are maintaining the reasonable procedures referred to in [Section 15]. This necessitates continuing observation of the manner in which such procedures are implemented." 46 C.F.R. § 527.1 (Supp.1967). See also Far East Conference v. FMC, 119 U.S.App.D.C. 110, 337 F.2d 146 (1964), cert. denied, 379 U.S. 991, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965).

7. Petitioners point out that Congress specifically rejected a statutory requirement that "No conference agreement shall be approved unless the Board finds that it contains effective provisions for policing the obligations under it." H.R.Rep. No. 498, 87th Cong., 1st Sess. 40 (1961). However, other legislative history indi-

cates that what Congress objected to was not any requirement of a provision in the agreement but rather the requirement of *effective* provisions which must be included *before* the agreements could be approved in 1961; See S.Rep. No. 860, 87th Cong., 1st Sess. 17–18 (1961); Hearings on H.R. 6775 before the Merchant Marine and Fisheries Subcommittee on Commerce, 87th Cong., 1st Sess. 553 (1961).

8. Section 29 of the Shipping Act, 46 U.S.C. § 828 (1964).

9. An evidentiary hearing is not required when the disposition made by the agency does not turn on a material issue of fact. Persian Gulf Outward Freight Conf. v. FMC, 126 U.S.App.D.C. 159, 375 F.2d 335 (1967); DAVIS, ADMINISTRATIVE LAW TREATISE § 7.07 (1958).

methods does not adequately police its members.[10]

 Petitioners suggest that because they are a foreign conference whose shippers are predominantly European, they are in certain respects beyond Congressional limitations of the extraterritorial jurisdiction of the Commission. In view of the immunity from our antitrust laws which conference members whose agreements are approved enjoy, we find these contentions to be without substance.[11]  The order under review is

Affirmed.

10. Our conclusion is supported by the Federal Reports Act, 5 U.S.C. § 139f (1964), which limits the penalties for failure to furnish information to those specifically provided by law, but permits "the withdrawal or denial of any right, privilege, priority, allotment, or immunity * * * [which] is legally conditioned on facts which would be revealed by the information requested."

11. In their brief petitioners tell us that the laws of foreign nations actually prohibit compliance with certain of the reporting requirements of Orders 7 and 14. There is no indication, however, that petitioners have made a good faith attempt to obtain a waiver of these restrictions from such foreign governments— an effort which the courts have uniformly required before they will consider claims of inability under foreign law. See, e. g., Montship Lines, Ltd. v. Federal Maritime Board, 111 U.S.App.D.C. 160, 295 F.2d 147 (1961); United States v. Standard Oil Co. (New Jersey), 23 F.R.D. 1 (S.D.N.Y.1958).