509 F.2d 1004
 The FIRST NATIONAL BANK OF ST. CHARLES et al., Petitioners,
v.
BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent,
and
Mark Twain Bancshares, Inc., and Mark Twain O'Fallon Bank,
Respondents-Intervenors.
 No. 74--1312.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 10, 1974.
Decided Jan. 22, 1975.
Reconsideration Denied Feb. 11, 1975.
 
 Richard L. Hughes, Mogab, Hughes & Green, Inc., St. Louis, Mo., for petitioners.
 Anthony J. Steinmeyer, Atty., Appellate Section, Civil Div., Dept. of Justice, Washington, D.C., for respondent.
 Lewis E. Striebeck, Jr., St. Louis, Mo., for intervenor, Mark Twain Bancshares.
 Godfrey Padberg, St. Louis, Mo., for intervenor, Mark Twain O'Fallon Bank.
 Before ROSS and STEPHENSON, Circuit Judges, and SCHATZ, District Judge.*
 STEPHENSON, Circuit Judge.
 
 
 1
 In this appeal the petitioner banks[1] seek review of an order of the Board of Governors of the Federal Reserve System (Board) approving the application of respondent-intervenor Mark Twain Bancshares, Inc. (Bancshares) for prior approval of its acquisition of 80.5% of respondent-intervenor Mark Twain O'Fallon Bank (O'Fallon Bank) pursuant to section 3 of the Bank Holding Company Act of 1956, 12 U.S.C. § 1842(a), (1970).[2] We hold that the petitioners' failure to present to the Board the objections they now raise requires us to dismiss their appeal for lack of subject matter jurisdiction.
 
 
 2
 The facts are not disputed. In October, 1973, Bancshares applied to the Board for prior approval of its acquisition of 80.5% of the voting shares of the proposed O'Fallon Bank. In accordance with regulations, notice of this application was printed in the Federal Register and public comment was invited. See 12 C.F.R. § 262.3(g) (1973). During the entire pendency of the Bancshares' application before the Board, including the four and one-half month comment period, petitioners did not object or ask to be heard.
 
 
 3
 However, prior to the Bancshares' application to the Board, petitioners had challenged the validity of the charter issued to O'Fallon Bank in state administrative and judicial proceedings. As a result, before any action was taken on the Bancshares' application, the Board staff made inquiries concerning the status of the state litigation and acquired specific information regarding the substantive issues of state law involved in that action. It was learned that a state appellate court hearing would not be held on those issues until late 1974. On April 17, 1974, having all these facts before it, the Board approved the Bancshares application for acquisition of the O'Fallon Bank voting shares.
 
 
 4
 Six days after this application had been approved, petitioners made their initial contact with the Board. At that time petitioners sought a Board hearing on a state law issue which the Board rejected as having been untimely raised. Petitioners next sought to stay the Board's approval order pending the outcome of the state litigation, but that motion was denied. On April 30, 1974, the petition to review was filed in this court.
 
 
 5
 In this appeal Bancshares and O'Fallon Bank have been allowed to intervene as respondents. They, along with the Board, contend that this court is without jurisdiction to hear this appeal. The court also has before it the substantive issues of whether O'Fallon Bank's allegedly defective incorporation can provide a basis for reversal of a Board order and whether Bancshares acquired O'Fallon Bank voting shares in violation of 12 U.S.C. § 1842. Neither of these issues was raised before the Board.
 
 
 6
 On the issue of jurisdiction, respondents contend that the doctrine of exhaustion of administrative remedies requires that this appeal be dismissed. We agree and hold that because petitioners did not present their objections to the Bancshares application to the Board, they have not properly exhausted their administrative remedies as required by the Supreme Court in Whitney National Bank v. Bank of New Orleans and Trust Co., 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); nor are they entitled to a review as 'aggrieved parties' under sections 9 and 105 of the Bank Holding Company Act, 12 U.S.C. §§ 1848 and 1850.[3]
 
 
 7
 In Whitney National Bank, supra, the Supreme Court examined the statutory grievance procedure under the Bank Holding Company Act of 1956 and held that all issues arising under that Act must be presented to the Federal Reserve Board prior to any judicial review. 379 U.S. at 419--420, 85 S.Ct. 551. The Court specifically found that '(o)pponents of the opening of a new bank by a bank holding company must first attack the arrangement before the Board, subject only to review by the Courts of Appeal.' Id. 379 U.S. at 422, 85 S.Ct. at 558 (emphasis added). The doctrine of exhaustion of administrative remedies was applicable, according to the Court, because of the 'specific statutory scheme for obtaining review' contained in the Act. 'A rejection of that doctrine would result in unnecessary duplication and conflicting litigation.' Id.
 
 
 8
 We hold that the language in Whitney National Bank requiring the initial presentation of issues before the Board controls the instant case. Petitioners admit that they have not formally raised before the Board either of the substantive issues asserted here. Instead they argue that Whitney National Bank does not require exhaustion of remedies but merely makes clear the fact that Board findings may only be attacked in the courts of appeals. While we admit that the specific facts upon which Whitney National Bank was decided differ from those in the instant case, the Court's extensive discussion of review procedures and exhaustion under the Bank Holding Company Act is fully applicable here.
 
 
 9
 In addition, the interpretation we have given to the language in Whitney National bank is entirely consistent with the Court's general attitude toward the doctrine of exhaustion of administrative remedies. The underlying principle of this doctrine, as expressed in United States v. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952), is that '(s) imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only erred but has erred against objection made at the time appropriate under its practice.' See generally 3 K. Davis, Administrative Law Treatise, §§ 20.01--.09 (1958 and 1970 Supp.). To allow the bypass of agency expertise would be inefficient and would undermine Congressional intent. Far East Conference v. United States, 342 U.S. 570, 574--575, 72 S.Ct. 492, 96 L.Ed. 576 (1952). See also McGee v. United States, 402 U.S. 479, 484, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971); McKart v. United States, 395 U.S. 185, 194--195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Thus we are not willing to accept petitioner's contention that the Court in Whitney National Bank did not intend to require exhaustion of remedies under the Bank Holding Company Act.
 
 
 10
 We similarly reject petitioner's suggestion that the Board's alleged 'actual notice' of their objection to the Bancshares application constituted sufficient presentation of issues for exhaustion purposes. In the first place, only one of the issues raised here, the defective incorporation issue, was advanced in the state court briefs which were given to the Board staff. Furthermore, the concept of 'informal exhaustion' was dismissed by the Court of Appeals for the District of Columbia after careful consideration of the issue in Gage v. A.E.C., 156 U.S.App.D.C. 231, 479 F.2d 1214, 1221--1222 (1973).
 
 
 11
 Petitioners next argue that dismissal here would be improper in light of 12 U.S.C. § 1850 which, in their view, specifically grants them the status of 'aggrieved parties' for purposes of review, yet does not require that they first present objections to the Board. We disagree. In our view, the specific legislative history of section 1850 and the extensive interpretive history of the term 'aggrieved party' as it has been used in the context of administrative law indicates that Congress incorporated within that statute the substance of the Supreme Court's exhaustion doctrine from Whitney National Bank.
 
 
 12
 In 1970 Congress enacted section 1850 as one of several amendments to the Bank Holding Company Act of 1956. That statute states that, with respect to a wide variety of Board regulated matters, a competitor bank 'shall have the right to be a party in interest in the proceeding and, in the event of an adverse order of the Board, shall have the right as an aggrieved party to obtain judicial review as provided in section 1848 of this title * * *.' The intent of Congress in drafting this statute was to provide a means by which those competitors and potential competitors who would be affected by a Board decision could participate in the proceedings and, where necessary, pursue an appeal. See S.Rep. No. 91--1084, 91st Cong., 2d Sess. (1970), U.S.Code Cong. and Admin.News, pp. 5519, 5534--5535 (1970); Conf.Rep. No. 91--1747, 91st Cong., 2d Sess. (1970), U.S.Code Cong. and Admin.News, pp. 5561, 5580--5581 (1970).
 
 
 13
 Thus section 1850 gave competing banks the right to appear as parties in Board proceedings. However, we believe that petitioners have mistakenly assumed that this general grant of standing carries with it no attendant procedural responsibilities. In discussing the review procedures under sections 1848 and 1850 prior to the passage of the 1970 amendments, Senator Sparkman, Chairman of the Senate Banking and Currency Committee, plainly stated that 'in order to challenge an unfavorable Board decision in court, the aggrieved parties must participate in administrative proceedings before the Board.' 116 Cong.Rec. 42426 (1970) (remarks of Sen. Sparkman).
 
 
 14
 This statement illustrates the fact the Congress in passing section 1850 expanded the category of parties who could claim standing under the 'aggrieved' definition, yet maintained the requirement from Whitney National Bank that any such party must pursue its administrative remedies first. By failing to avail themselves of the right of intervention under section 1850 as 'aggrieved parties,' petitioners no longer occupy that status for purposes of judicial review as provided by section 1848. Simply stated, presentation of an objection to the Board is a condition precedent to standing as a 'party aggrieved' before this court.
 
 
 15
 Finally, this interpretation of the term 'aggrieved party' has been adopted by other courts which have considered those same words in the context of administrative acts similar to the Bank Holding Company Act. See Gage v. A.E.C., 156 U.S.App.D.C. 231, 479 F.2d 1214, 1218 n. 14 (1973); Easton Utilities Comm'n v. A.E.C., 137 U.S.App.D.C. 359, 424 F.2d 847, 851--852 (1970); Red River Broadcasting Co. v. F.C.C., 69 App.D.C. 1, 98 F.2d 282, 287, cert. denied, 305 U.S. 625, 59 S.Ct. 86, 83 L.Ed. 400 (1938).[4] Cf. Outward Continental No. Pac. Freight Conf. v. Federal Maritime Comm'n, 128 U.S.App.D.C. 199, 385 F.2d 981, 982 n. 3 (1967).
 
 
 16
 We conclude that petitioners have not satisfied the exhaustion of remedies requirement set out in Whitney National Bank. Neither have they fulfilled the definition of 'aggrieved parties' for purposes of judicial review because of their failure to present their substantive objections at the Board hearing. This appeal must therefore be dismissed for lack of jurisdiction. We do not reach the merits of substantive issues raised by petitioners.
 
 
 17
 Dismissed.
 
 
 18
 ORDER ON PETITIONERS' PETITION FOR RECONSIDERATION OF ORDER
 
 
 19
 STEPHENSON, Circuit Judge.
 
 
 20
 Petitioners' petition seeking reversal of our dismissal of its appeal is denied. However, revision of the last paragraph of our opinion is in order to the extent that we spoke of the necessity for the 'aggrieved parties' to present their substantive objections at the Board hearing as a prerequisite to judicial review. We should have spoken of the necessity of presenting substantive objections during the Board proceedings. A Board hearing was neither required nor held.[1]
 
 
 21
 As we pointed out in our opinion, the Board published a notice of Bancshares' application in 38 Federal Register 33537 on December 5, 1973 inviting comments of all interested parties. (This was done pursuant to 12 C.F.R. § 262.3(g).) No comments, objections, or requests to be heard were made by petitioners during the entire pendency of Bancshares' application before the Board. On April 17, 1974, nearly four and one-half months later, the Board approved Bancshares' application.
 
 
 22
 We reaffirm our view that petitioners have not satisfied the exhaustion requirement. Neither have they demonstrated they were 'aggrieved parties.'
 
 
 
 *
 Honorable Albert G. Schatz, District Judge, District of Nebraska, sitting by designation
 
 
 [1]
 Petitioners include First National Bank of St. Charles and three other Missouri banks in the St. Louis banking market
 
 
 [2]
 That statute provides, in relevant part, that:
 (a) It shall be unlawful, except with prior approval of the (Federal Reserve) Board, * * * (2) for any action to be taken that causes a bank to become a subsidiary of a bank holding company; (3) for any bank holding company to acquire direct or indirect ownership or control of any voting shares of any bank if, after such acquisition, such company will directly or indirectly own or control more than 5 per centum of the voting shares of such bank * * *.
 
 
 [3]
 Section 1848 provides:
 Any party aggrieved by an order of the Board under this chapter may obtain a review of such order in the United States Court of Appeals within any circuit wherein such party has its principal place of business, or in the Court of Appeals in the District of Columbia, by filing in the court, within thirty days after the entry of the Board's order, a petition praying that the order of the Board be set aside. A copy of such petition shall be forthwith transmitted to the Board by the clerk of the court, and thereupon the Board shall file in the court the record made before the Board, as provided in section 2112 of Title 28. Upon the filing of such petition the court shall have jurisdiction to affirm, set aside, or modify the order of the Board and to require the Board to take such action with regard to the matter under review as the court deems proper. The findings of the Board as to the facts, if supported by substantial evidence, shall be conclusive.
 Section 1850 provides:
 With respect to any proceeding before the Federal Reserve Board wherein an applicant seeks authority to acquire a subsidiary which is a bank under section 1842 of this title, to engage directly or indirectly in a nonbanking activity pursuant to section 1843 of this title, or to engage in an activity otherwise prohibited under sections 1971 to 1978 of this title, a party who would become a competitor of the applicant or subsidiary thereof by virtue of the applicant's or its subsidiary's acquisition, entry into the business involved, or activity, shall have the right to be a party in interest in the proceeding and, in the event of an adverse order of the Board, shall have the right as an aggrieved party to obtain judicial review thereof as provided in section 1848 of this title or as otherwise provided by law.
 
 
 [4]
 Subsequent to the decision in Red River, Congress amended the FCC Act to allow appeal by parties who had either participated in the administrative proceedings or had filed a petition for reconsideration within 30 days after the order was entered. See 47 U.S.C. § 405 (1970). Aside from this statutory expansion of standing for purposes of review, the Red River interpretation of the term 'aggrieved party' remains intact. See Joseph v. F.C.C., 131 U.S.App.D.C. 207, 404 F.2d 207, 209 & n. 6 (1968). See also Gross v. F.C.C., 480 F.2d 1288, 1290 n. 5 (2d Cir. 1973)
 
 
 [1]
 Under 12 C.F.R. § 262.3(g)(2) the Board may hold hearings for the purpose of taking evidence if deemed desirable