# IOELU F. C. PEN, Appellant

## v.

## FAIMA LAVATA`I, MEL LAVATA`I and DOES I - V, Appellees

High Court of American Samoa
Appellate Division

AP No. 8-94

April 9, 1996

Before RICHMOND, Associate Justice, ALARCON[*], Acting Associate Justice, UNPINGCO[**], Acting Associate Justice, LOGOAI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Appellant, Togiola T.A. Tulafono
 For Appellees, Afoa L. Su`seu`e Lutu

---

[*] Hon. Arthur L. Alarcon, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation of the Secretary of the Interior.

[**] Hon. John S. Unpingco, Chief Judge, United States District Court for the District of Guam, sitting by designation of the Secretary of the Interior.

Opinion:

RICHMOND, J.:

This case concerns the extent of matai authority to revoke assignments of family communal land.

## HISTORY

Appellant Ioelu F. C. Pen ("Pen") brought this action in the Land and Titles Division ("trial court"), seeking a permanent injunction against appellees Faima Lavata`i ("Faima") and his son Malakai Lavata`i, to enjoin their interference with Pen's use and enjoyment of a portion of land named Lepine, leased to Pen by the late Lavata`i Natia ("Lavata`i"), then the sa`o, or senior matai, of the Lavata`i family of Nu`uuli. Pen is not a member of the Lavata`i family.

On March 21, 1994, the trial court found that Pen's lease was not validly created because a preexisting assignment of the land to Faima was not validly revoked. The trial court delayed voiding the lease, however, in order to protect lending institutions with pecuniary interests in Pen's business. Cross-motions to reconsider or for new trial were denied on May 9, 1994. This appeal came properly before this court on October 24, 1995, with both parties represented by counsel.

## DISCUSSION

Pen argues that: (1) the trial court factually erred in concluding that Faima possessed a valid assignment of communal land; (2) courts may not invalidate a lease approved by the Governor absent a showing of fraud in the procurement of the lease; (3) the trial court erred in reviewing the issues de novo, but instead should have treated the case as an appeal of an agency decision, giving proper deference to the agency's ruling; and (4) the trial court erred in limiting the power of the matai to change or revoke an assignment.

A. The Factual Validity of the Assignment to Faima

On appeal, the trial court's factual findings will not be reversed unless they are shown to be clearly erroneous. A.S.C.A. § 43.0801(b).

In the present case, Pen challenges the trial court's factual finding that Faima held an assignment interest in Lepine, stating that Faima was present during a family meeting where the intended lease was discussed, and implying that Faima would have objected at that time if he had actually possessed a valid assignment. Pen further asserts that Faima's claim is

12

defective because the matai who purportedly conveyed the assignment to Faima was not in office at the time the assignment allegedly became effective. Finally, Pen asserts that Faima lived in Western Samoa for a period of time, and that he lived on land named Tutu whenever he was in American Samoa prior to 1980 when he actually took up residence on Lepine, indicating that Faima had no interest in Lepine until 1980 at the earliest.

Although Pen's view of the facts is one possible account, the trial court's findings are not clearly erroneous. The trial court made its decision based, in part, on a visual inspection of Lepine and its structures. Addressing specifically the argument that Faima would have objected to the lease if he actually had a valid assignment, Faima's testimony at trial and the opinion of the trial court both indicated that he did object. We have no reason to hold that a reasonable finder of fact could not have believed Faima's testimony.

To the assertion that the matai granting Faima's assignment was not in office at the time it was granted, there is evidence in the record that Faima had some interest in Lepine as early as 1931. Although Faima testified that he thought the assignment occurred in 1963 (even though the matai did not take office until 1970), the thrust of Faima's testimony is that he began using heavy equipment to work the land after it was assigned to him by the Lavata'i titleholder. Faima clearly did intend to testify that the assignment occurred, in chronology, after the matai took office. Again, we have no particular reason to question the trial court's finding, despite the fact that Faima testified to events that occurred more than 20 years ago, and his memory of them may consequently not have been precise.

Regarding Pen's assertions about Faima's absences from Lepine, we acknowledge that these factors may be relevant. However, in view of evidence that Faima cleared Lepine and worked the entire land mass in the 1930s, a reasonable finder of fact could readily conclude that Faima had important ties to Lepine prior to 1980, contrary to Pen's assertions. The trial court's finding of an assignment is, accordingly, not clear error.

B. Separation of Powers

Pen argues that the trial court's decision violates constitutional separation of powers principles by invalidating a lease of communal land, which was properly approved by the Governor in accordance with A.S.C.A. § 37.0221. We doubt that this argument is of constitutional magnitude, since it is founded on a regulatory power created by statute, and not on the Constitution itself.

The thrust of Pen's argument is, essentially, that the trial court could

13

not alter land lease decisions made by the Governor unless fraudulently induced. The mere fact of the Governor's approving signature does not render a flawed lease impervious to legal challenge any more than it could transform a bill into law without constitutionally proper legislative approval. Furthermore, A.S.C.A. § 4.1040 provides for appellate review of a final administrative decision in a "contested case." In such cases, the Appellate Division may reverse or modify an agency decision if it is contrary to law or based on factual findings which are "clearly erroneous," or if it is otherwise arbitrary, capricious or abusive of discretion. A.S.C.A. § 4.1043-44.

■ Certain administrative functions are concededly beyond the reach of any judicial review because they are "committed to agency discretion by law." *See* KENNETH C. DAVIS, ADMINISTRATIVE LAW OF THE SEVENTIES § 28.16 (1976). For instance, the determination of whether an alien should be deported according to existing immigration policy is a question of policy, committed to the Immigration Board, and not judicially reviewable on its merits. *Farapo v. American Samoa Gov't*, 23 A.S.R.2d 136, 142-43 (App. Div. 1993). Additionally, the determination of whether an alienation of land is improvident within the meaning of A.S.C.A. § 37.0203(c) is probably a question of policy, committed to the discretion of the Land Commission and the Governor, and ordinarily not reviewable by the courts. *See Vaimoana v. Tuitasi*, 18 A.S.R.2d 88, 92 (App. Div. 1991).

■ Pen has not made, nor can we think of, any serious argument that the Constitution or land lease statutes in any way commit the resolution of land title disputes to the Governor and the Land Commission by the force of law, thus insulating the Governor's decisions from judicial interference. The function of the Land Commission and the Governor in the approval of leases of communal land is to provide a check against improvident leases that would be harmful to the Samoan land tenure system, not to sit in judgment on land title issues. *Vaimoana*, 18 A.S.R.2d at 92. The statute does not devise a system where the Governor effectively has the right to reallocate property without regard to the preexisting rights of others in that property, and then to have those decisions immune from judicial review. The Governor's statutory authority to approve a lease between private parties presupposes that the lessee actually has the authority to enter into the lease in the first place.

C. De Novo Review

■ The present case was brought in the Land and Titles Division where the facts were reviewed de novo, not in the Appellate Division. The administrative decision did not concern a contested case within the meaning of A.S.C.A. § 4.1040, because Faima was not represented at the Land Commission hearings, and thus could not contest the lease.

14

■ Clearly, the Land Commission could not have made a decision regarding competing claims to the property if one of the claims was never presented. If the Land Commission and ultimately the Governor had considered the validity of Faima's claimed assignment when deciding whether to approve Pen's lease, the Land Commission's decision would have been entitled to proper deference by an appellate court. In the present matter, however, the Land Commission never contemplated that collateral issue when approving the lease, and likewise never rendered an appealable judgment regarding Faima's claimed assignment. Appellate courts lack subject matter jurisdiction to consider issues that were not presented to the agency. *First National Bank of St. Charles v. Federal Reserve*, 509 F.2d 1004, 1006 (8th Cir. 1975).

■ As a matter of due process of law, the Land Commission should hold public hearings on proposed transfers of land, and give reasonable notice to interested parties. *Vaimoana v. Tuitasi*, 22 A.S.R.2d 1, 6 (Trial Div. 1992). Separation of powers principles do not prevent the judicial branch from voiding a lease approved by the Governor in violation of due process rights. Conversely, if Faima did have reasonable notice of the proceedings at the Land Commission but failed to challenge the lease and thereby preserve his property interest, he should be estopped from subsequently asserting his interest in the courts to the detriment of the lessor who has expended resources in reliance on the validity of the lease. *See Mundy v. Arcuri*, 267 S.E.2d 454, 457 (W.Va. 1980).

The trial court found that the "lease was executed and presented for gubernatorial approval, all without Faima's knowledge or consent." *Pen v. Faima*, LT No. 61-92, slip op. at 3 (Land & Titles Div. 1994). The record does not demonstrate that this factual finding is clearly erroneous. Failure by the trial court to conduct a de novo review of the facts would, therefore, have deprived Faima of a property interest without due process of law.

D. Matai Authority

The fundamental issue in this case involves the extent of matai authority to revoke an assignment of communal land to a family member. This issue brings the "twin cornerstones" of the fa`a Samoa into sharper focus:

> The twin cornerstones of the Samoan way of life are communal land tenure and the matai system. Each is essential to the other. Without the matai system to administer it, the communal land system becomes anarchy. Without the communal land system, there is no reason for the matai.

*Calliope v. Silao*, 2 A.S.R.2d 1, 2 (Land & Titles Div. 1983).

15

In the present case, the matai's powers are, at least superficially, at cross-purposes with the protection of family communal land, since the circumstances involve an attempt by the matai to revoke an assignment of land held by a family member in favor of a long-term lease to be granted to a non-family member. The present facts bring a fundamental problem into focus, namely, the more power the matai retains, the more he is empowered to alienate or endanger family lands; and the more family lands are regulated and protected by law, the more the authority of the matai over family lands is weakened.

We approach this problem by a resort to the fundamental principles governing the application of Samoan customary law. The Revised Constitution of American Samoa, Article I, Section III states, in relevant part:

> It shall be the policy of the government of American Samoa to protect persons of Samoan ancestry against alienation of their lands and destruction of the Samoan way of life and language, contrary to their best interests. Such legislation as may be necessary may be enacted to protect the lands, customs, culture, and traditional Samoan family organization.

This language not only empowers the Legislature to enact measures protecting the fa`asamoa, but also adopts protection of the fa`asamoa as a constitutionally mandated policy goal. In this light, we should interpret statutes in a way that are protective of Samoan custom whenever it is possible to do so.

In the present case, the matai entered the lease with Pen without any family discussion, although there was some evidence that he mentioned his intention to do so at a family meeting. The trial court in this matter took the position that a matai is required to consult with the entire family when making the decision to lease communal land to a non-family member, where the lease would necessarily revoke an assignment of land to a family member. This holding gives rise to three issues: (1) whether or not the matai must consult with family members prior to entering a lease; or (2) whether a matai must consult his family before revoking an assignment of land; and (3) if so, whether the requirement of consultation merely means notice and an opportunity to comment, or a process whereby the family agrees to the proposed action.

### 1. Requirement of Consultation to Enter a Lease

Clearly, traditional Samoan custom requires a sa`o to consult with his

16

family before dealing dispositively with communal land. Nevertheless, this court argued in *Vaimoana*, 18 A.S.R.2d at 91, that the land lease statutes effectively rendered this customary requirement unnecessary by failing to codify it. The *Vaimoana* court took note of Article I, Section III of the Revised Constitution, as well as the statutory directive that the "customs of the Samoan people not in conflict with the laws of American Samoa . . . shall be preserved," A.S.C.A. § 1.0202, but found the custom to be in conflict with the land lease statutes by virtue of the fact that it was not mentioned in the statutes.

> Appellant errs, though, in arguing that because custom requires family consultation before the sa`o conveys communal land, courts must implement that custom. This argument falters because of the statutory phrase, "not in conflict with the laws of American Samoa." The statute provides for judicial preservation of customs "not in conflict" but not for those customs that are "in conflict." This provision authorizes the Fono, not the High Court, to set aside custom by statutes to the contrary.

In this case, the Fono has provided by law for conveyances without an absolute requirement of family consultation, so the custom upon which appellants rely is "in conflict." *Vaimoana*, 18 A.S.R.2d at 91.

We think that the foregoing conclusion flies in the face of logic. The language of the statute does not specifically require family consultation, but neither does it specifically state that such consultation is no longer necessary. The statute, if anything, is merely silent on the matter, and hardly "in conflict" with the custom. The fact that the statute enacted additional checks and safeguards against the improvident alienation of land should in no way imply that the traditional checks are supplanted, particularly in light of statutory language which demands the preservation of customs which are "not in conflict with the laws of American Samoa," and constitutional language declaring it the policy of the government to protect Samoans "against alienation of their lands, and the destruction of the Samoan way of life."

There is no logical reason why customary family consultation cannot continue in a system where the approval of the Governor is also required for the leasing of native land. Although we have other grounds upon which to base our present decision, if we were forced to revisit this particular portion of *Vaimoana*, we would likely have overruled it, or at least limited it to its facts.

### 2. Requirement of Family Consultation to Revoke an Assignment

17

■ Regardless of whether a matai is required to consult his family before he enters a lease, certain circumstances demand that he do so when revoking an assignment of communal land to a family member, and that is what the lease effectively does in this case. Although communal land does not lose its communal character when assigned, *see Tauiliili v. Moega*, 3 A.S.R. 356, 357 (Trial Div. 1958), the assignee does receive certain traditional property rights according to Samoan custom, including the right to remain on the land for life, absent good cause for removal. *Taesali v. Samuela*, 3 A.S.R. 359, 361-62 (Trial Div. 1958); *see also Malala v. Temu*, 11 A.S.R.2d 137, .142 (Land & Titles Div. 1989). Good cause may include either a failure to render tautua (traditional service to matai and family), *Leapaga v. Masalosalo*, 4 A.S.R. 868, 872 (Appellate Div. 1962), or an overriding family purpose. *Tiumalu v. Lio*, 3 A.S.R. 176, 179-80 (Trial Div. 1955).

■ An assignment of communal land may only be revoked for an overriding family purpose if specific conditions are present:

> An express or implied assignment of a communally owned house and appurtenant areas creates in the family member the right to continue beneficial occupancy until death, voluntary removal or authorized removal. Removal may be ordered by the matai only after:
> a. A family meeting at which all partied are permitted to be heard.
> b. A decision by the matai, reasonable under the circumstances, that the removal is for an important family purpose.
> c. Provision of specific alternate land for erection of a dwelling unit if desired, or other arrangement reasonable under the circumstances.

*Coffin v. Felise*, 4 A.S.R. 14, 18 (Land & Titles Div. 1970). Although *Vaimoana*, 18 A.S.R.2d at 91, stood for the principle that family consultation is not required for a matai to lease communal property to non-family members (a doubtful proposition), family consultation is clearly required when doing so would mean revoking an assignment to a family member regarding the land to be leased.

### 3. The Meaning of Family Consultation

The issue arises as to whether the required family consultation means that the matai consider the opinions of all who want to express them and then make his own decision, or whether it means that the family exercises authority.

18

Governing by consensus is the Samoan way. Consensus is not democracy by ballot, where one side wins and the other loses. Rather, consensus governance is a system designed to promote harmony within the family by discussing issues and gradually melding opinions and wills so that in the end everyone involved is satisfied, and all objections are resolved, or at least withdrawn. As former Governor Peter Tali Coleman recently explained:

> Our American legal system—which also operates in Samoa—is based on English jurisprudence as it has evolved over the centuries. It's a system of conflict resolution which produces clearly identifiable winners and losers. Our Samoan culture, on the other hand, is based on thousands of years of the evolution of a Polynesian heritage of conflict resolution by consensus building. Whenever possible, we, as Polynesians, try to avoid conflict. When we can't avoid conflict, we try to resolve it so everyone goes away a winner if at all possible.

Peter Tali Coleman, *Peter Tali Coleman on the F.B.I. Report*, SAMOA NEWS, Aug 7. 1995, at 10.

 Samoan society and culture, although governed by hereditary rulers within families, is not autocratic or dictatorial. We hold, accordingly, that a matai must arrive at consensus in the traditional Samoan way before revoking an assignment of communal land based on the family purpose doctrine.

The trial court's judgment is affirmed. It is so ordered.