**AMERICAN TRUCKING ASSOCIA-TIONS, INC., et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMIS-SION and the United States of America, Respondents.**

No. 81–4026.

United States Court of Appeals, Fifth Circuit.

March 30, 1982.

See also, 5 Cir., 659 F.2d 452, 5 Cir., 666 F.2d 167, 5 Cir., 669 F.2d 957.

Robert J. Grady, Kenneth P. Kolson, Appellate Section, Robert B. Nicholson, Antitrust Div., Dept. of Justice, Washington, D. C., for respondents.

Serby & Mitchell, P. C., Alan E. Serby, Atlanta, Ga., for Brannan, Owen, Refrigerated.

Brooks & Matthews, Hugh T. Matthews, Dallas, Tex., for Steere.

Perry, Crockett, Morrisson & Starling, Donald B. Morrison, Jackson, Miss., for Merchants.

Alan J. Thiemann, Washington, D. C., for American, Red Arrow, Merchants Truck and Steere.

Robinson, Felts, Starnes & Latting, P. C., Phillip Robinson, Austin, Tex., for Central, Great Western, Miller, and Saia.

Phinney, Hallman, Pulley & Coke, Dallas, Tex., for Frozen and Southwestern.

Leroy Hallman, Dallas, Tex., for Steere.

Alan F. Wohlstetter, Stanley I. Goldman, Washington, D. C., for Aero Mayflower, et al.

Thomas E. James, Dallas, Tex., for Rose Truck Line, et al.

James M. Doherty, Austin, Tex., for Moss Trucking Co.

Bruce E. Mitchell, Alan Serby, Atlanta, Ga., for Motor Carrier Lawyers Assoc.

Eugene C. Ewald, Bloomfield Hills, Mich., for Nat. Auto. Transporters.

Dennis Dean Kirk, Washington, D. C., for Specialized Carriers.

Keith G. O'Brien, Edward K. Wheeler, Washington, D. C., for Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

On Petition to Compel Enforcement of This Court's Mandate.

Before RUBIN, RANDALL and TATE, Circuit Judges.

PER CURIAM:

Carriers and carrier associations aggrieved by the alleged failure of the Interstate Commerce Commission (ICC) to follow a mandate issued by this court and to apply our interpretation of the Motor Carrier Act of 1980 in a large number of previously pending cases, now finally decided by the ICC, seek to have those proceedings reopened and to have us determine whether the ICC has disregarded or failed properly to apply our mandate. We conclude that there is no statutory basis for such review and that adequate remedy is available to the petitioners-intervenors by following established procedures. Having issued mandamus to compel future adherence to the prior mandate, we refuse to undertake review of past proceedings.

In an opinion [1] dated February 25, 1982, we clarified our mandate in *American Trucking Ass'ns v. ICC*, 659 F.2d 452 (5th Cir. 1981). We specifically "reserve[d] judgment on whether the claim made by the household goods intervenors that the ICC has improperly held that they are not proper parties to protest the grant of contract carrier household goods authority is properly before us." *American Trucking*

---

1. *American Trucking Ass'ns v. ICC*, 669 F.2d 957 (5th Cir. 1982).

*Ass'ns v. ICC*, 669 F.2d 957, 963 (5th Cir. 1982).

Briefly we recount the arguments made by the petitioners and intervenors on this issue in the briefs accompanying the Petition to Compel Enforcement of This Court's Mandate. The American Trucking Associations Group[2] requested this court to "vacat[e] all administratively final decisions and actions by the ICC issued since October 1, 1981, which grant or issue certificates or permits in violation of the mandate." The Household Goods Carriers also asked us to "cause the vacation of all certificates and permits issued by the Commission in violation of this court's opinion." They complained that in some instances their applications for intervention in contract carrier applications had been rejected by the ICC because the "protestants have no standing to appear in opposition, thus precluding these carriers from establishing on a public record that the Commission's proposed grants of household goods carrier authorities are unsupported by any evidence of fitness, willingness and ability to perform the specialized household goods service or any need for such service." The ICC responded that we lacked jurisdiction to review and overturn the numerous agency decisions listed by petitioners, unless proper petitions for review had been filed in those cases with this court. The ICC also noted that the carriers to whom such authorities had been issued were entitled to notice, hearing, and the other concomitants of due process before the rights granted them could be divested. The Household Goods Carriers replied that the "Commission has now immunized its actions from challenge by declaring that household goods carriers are not proper parties to protest the grant of contract carriers household goods authority and now considers these cases as 'unopposed.'"

The American Trucking Associations Group then proposed two alternatives for dealing with certificates or permits issued after our October 1 opinion and in apparent violation of it. The ATA suggested that we "authorize the Commission to enter a show cause order" in each such application proceeding. Individual applicants would "be accorded a reasonable opportunity (20 or 30 days) to demonstrate that a part or parts of authority in conflict with [the] court's opinion should have been granted. A reformed certificate or permit would be issued.... Alternatively, the Commission could be directed to reopen proceedings as required by this court's order and stay taking necessary action on the certificate for a reasonable period of time (20 or 30 days)."

■ To preserve the right to appeal a decision made in an agency proceeding, a person must ordinarily intervene[3] in that proceeding. 28 U.S.C. § 2344 (1976), provides that "[a]ny *party* aggrieved by the final order may . . . file a petition to review the order in the court of appeals wherein venue lies." (Emphasis added.) The word "party" is used in a definitive sense in the statute, and limits the right of appeal to those who actually participated in the agency proceeding. *See S. C. Loveland Co. v. United States*, 534 F.2d 958, 961 (D.C.Cir. 1976); *Gage v. United States Atomic Energy Comm'n*, 479 F.2d 1214, 1217–21 (D.C. Cir.1973). As one court has noted, "it is incumbent 'upon an interested person to act affirmatively to protect himself' in administrative proceedings, and . . . '[s]uch a person should not be entitled to sit back and wait until all interested persons who do so act have been heard, and then complain that he has not been properly treated.'" *Nader v. Nuclear Regulatory Comm'n*, 513 F.2d 1045, 1054 (D.C.Cir.1975) (footnotes omitted). *See also National Welfare Rights Org. v. Finch*, 429 F.2d 725, 736–39 (D.C.Cir. 1970) (stressing that agency intervention makes the right to judicial review effective because the record is properly formed).

---

2. The parties are fully identified in *American Trucking Ass'ns v. ICC*, 669 F.2d 957, 959 n.2 (5th Cir. 1982).

3. The applicable standards for intervention are found at 49 U.S.C.A. §§ 10922(b)(7), 10923(b)(4) (West Supp.1981).

■ The proposals of the petitioners and intervenors rest in large part on the assumption that they could not obtain judicial review of the issuance of the challenged authorities in any other fashion. This postulate is unwarranted. Those who would intervene but are denied permission to do so are not without remedies. They "may take an immediate appeal from that denial within the agency and, if necessary, to the Court of Appeals." *American Trucking Ass'ns v. United States*, 627 F.2d 1313, 1318 (D.C.Cir. 1980). If it is determined that the right to intervene was improperly denied, then a court of appeals may order the Commission to permit intervention and reopen the prior order for reconsideration. *S. C. Loveland Co. v. United States*, 534 F.2d 958, 960 & n.1 (D.C.Cir.1976) (the court refused to consider petitioner's arguments addressed to the merits of the Commission's order). Of course, if an appeal is taken by one who was a party to the agency proceeding, the interested person may petition to intervene in the appellate proceedings. 28 U.S.C. § 2323.[4]

The petitioners and intervenors can point to neither statute nor precedent authorizing our review of the large number of proceedings involved. They urge that we should nonetheless order this relief, presumably by way of mandamus, both because it would more fully effectuate our prior mandate and because it would be more efficient for one court to handle the large number of cases that may be involved if we undertake the unique kind of review that is suggested. The utilitarian argument is of doubtful validity, for due process would require the joinder of the parties in each proceeding involved, a project that would soon become so vast in size and difficult in issues that its complexity might destroy the effectiveness of the mass undertaking. The petitioners-intervenors compare the specter of a vast number of appeals and great burdens on the appellants and the appellate courts if their remedy is not granted. The ICC pleads that review of the past proceedings would create a vast workload, too great for its meager staff. It is impossible for us to determine a priori whose prediction is chimerical. In any event, the review of each proceeding might require the development of a further evidentiary record and convert our appellate role into that of a trial court. Adequate enforcement of the mandate has been obtained both by our issuance of the mandamus to govern future proceedings and the availability of appeal for completed proceedings.

Congress has not localized appeals from ICC orders as it has done in the case of those administrative appeals for which it

---

4. In two rare instances a person may appeal an agency action even if not a party to the original agency proceeding. (1) An appeal is allowed if the agency action is "attacked as exceeding the power of the Commission." *Schwartz v. Alleghany Corp.*, 282 F.Supp. 161, 163 (S.D.N.Y. 1968) (three-judge court). *Accord, Edward Hines Yellow Pine Trustee v. United States*, 263 U.S. 143, 147, 44 S.Ct. 72, 73, 68 L.Ed. 216, 220 (1923) (plaintiffs may maintain suit, although not parties to the ICC order proceeding, if the order is alleged to be in excess of the ICC's power and subjects the plaintiffs to actual or threatened legal injury); *Skinner & Eddy Corp. v. United States*, 249 U.S. 557, 563–64, 39 S.Ct. 375, 377, 63 L.Ed. 772 (1919) (If the "contention is that the commission has exceeded its statutory powers .... the courts have jurisdiction of suits to enjoin the enforcement of an order, even if the plaintiff has not attempted to secure redress in a proceeding before the commission."). (2) An appeal is allowed if a person, not a party to the agency proceeding, challenges the constitutionality of the statute conferring authority on the agency. 3 K. Davis, Administrative Law Treatise § 22.08, at 240. Neither of these situations obtains here.

Nothing in this opinion is meant to equate administrative standing with judicial standing. We recognize that the two concepts of standing are governed by different standards. For instance, judicial standing is affected by constitutional limitations derived from Article III's requirement of a "case or controversy." *See Koniag, Inc., Village of Uyak v. Andrus*, 580 F.2d 601, 611–17 (D.C.Cir.) (Bazelon, J., concurring), *cert. denied*, 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978); *Interstate Investors, Inc. v. United States*, 287 F.Supp. 374, 392 (S.D.N.Y.1968) (three-judge court) ("The fact of intervention before the Commission is not enough by itself to establish standing ...."), *aff'd*, 393 U.S. 479, 89 S.Ct. 707, 21 L.Ed.2d 687 (1969); 1 K. Davis, Administrative Law Treatise § 8.11, at 564 (1958).

desired uniform review.[5] We should not arrogate the decision making authority meant to be exercised by other circuits. Having done our work, we should allow our colleagues to do theirs.

 Lacking statutory authority to undertake the kind of across the board review suggested to us, and the prerequisites for mandamus not having been established,[6] we decline to do so on the basis that it is a corollary method to enforce the mandate.[7] Accordingly, all further relief to seek enforcement of our prior opinion is denied.[8]

SO ORDERED.

---

5. *See, e.g.*, Voting Rights Act of 1965, 42 U.S.C. §§ 1973b, 1973c, 1973*l*(b) (the District court for the District of Columbia has sole jurisdiction to issue any declaratory judgment); Economic Stabilization Act of 1970, § 211(b)(2), 12 U.S.C. § 1904 note ("the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title").

6. The writ will issue only if the party seeking mandamus establishes that he has "no other adequate means to attain the relief he desires,"

and that his right to issuance of the writ is "clear and indisputable." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980).

7. The mandate in the October 1 opinion was not issued until November 13, 1981.

8. This opinion, along with our opinion of February 25, 1982, completes disposition of the Petition to Compel Enforcement of This Court's Mandate.