**Patrick W. SIMMONS, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Association of American Railroads, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Intervenors.**

No. 82–1503.

United States Court of Appeals, District of Columbia Circuit.

Argued March 31, 1983.

Decided Aug. 23, 1983.

Gordon P. MacDougall, Washington, D.C., for petitioner.

H. Glenn Scammel, I.C.C., Washington, D.C., with whom John Broadley, Gen. Counsel, Ellen D. Hanson, Associate Gen. Counsel, I.C.C., John J. Powers, III, and John P. Fonte, Dept. of Justice, Washington, D.C., were on the joint brief, for respondents. Robert B. Nicholson and Kenneth P. Kolson, Attys., Dept. of Justice, Washington, D.C., also entered appearances for respondents.

Joan M. Darby, Washington, D.C., for Intervenor Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America; Richard H. Streeter and Keith G. O'Brien, Washington, D.C., were on brief; Edward K. Wheeler, Angelo V. Arcadipane and Robert J. Higgins, Washington, D.C., also entered appearances.

Hollis G. Duensing, Washington, D.C., entered an appearance for intervenor, Ass'n of American Railroads.

Before TAMM, WALD and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Simmons petitions under 28 U.S.C. § 2344 (1976) for review of a rule issued by the Interstate Commerce Commission. We dismiss his petition because he did not participate in the rulemaking and therefore is not an aggrieved party, within the meaning of that section, entitled to direct review. We also hold that Simmons' appeal, having lacked a proper jurisdictional basis from the start, cannot be pursued following his dismissal by an intervenor which also fails to meet jurisdictional requirements.

I

On September 16, 1981, the Interstate Commerce Commission issued two notices proposing separate reductions in the annual reporting requirements of, respectively,

Class I railroads and Class I and II motor carriers. *See Revision to Railroad Annual Report Form R–1,* 46 Fed.Reg. 45966; *Revisions to Annual Motor Carrier Reporting Requirements,* 46 Fed.Reg. 45967. The railroad notice proposed both additions and reductions with regard to reporting requirements; the motor carrier notice, only reductions. The proposals eliminated, respectively, twenty-one and fifteen reporting schedules; the only elimination common to the two proceedings governed compensation of officers and directors.

No person offered comments in both rulemakings. Petitioner Patrick Simmons filed comments in the railroad docket, I.C.C. No. 38590, while The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (IBT) filed comments in the motor carrier docket, I.C.C. No. 38568. The ICC issued two separate final rules, one day apart. *See Revision to Railroad Annual Report Form R–1,* 365 I.C.C. 552 (1982) (to be codified at 49 C.F.R. pt. 1241 (1983)); *Revisions to Annual Motor Carrier Reporting Requirements,* 365 I.C.C. 540 (1982) (to be codified at 49 C.F.R. pt. 1249 (1983)).

On May 4, 1982, Simmons filed a petition to review both rules in this court. On June 1, more than sixty days after the entry of the final order of the agency, IBT moved to intervene pursuant to 28 U.S.C. § 2348 (1976). On June 16, we granted IBT's unopposed motion.

The Commission now moves for dismissal of the petition insofar as it seeks review of the motor carrier docket. It argues that Simmons could not seek review of the decision in that docket because he did not participate in the rulemaking, and that the intervenor, IBT, lacks an independent jurisdictional basis to maintain the suit since its motion to intervene was made and granted beyond the 60-day period specified for seeking direct review of Commission orders.

## II

■ Direct review of orders of the ICC and of five other agencies (the Federal Communications Commission, Department of Agriculture, Federal Maritime Commission, Maritime Administration and Nuclear Regulatory Commission) is governed by the Administrative Orders Review Act, ch. 1189, 64 Stat. 1129 (1950), codified at 28 U.S.C. §§ 2341–2352 (1976), generally known as the Hobbs Act, which provides in pertinent part:

> *Any party aggrieved* by the final order [of the agency] may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies.

28 U.S.C. § 2344 (1976) (emphasis added). This circuit has consistently interpreted the phrase "party aggrieved" to require as a general matter that petitioners be parties to any proceedings before the agency preliminary to issuance of its order. *See Gage v. AEC,* 479 F.2d 1214, 1218 (D.C.Cir.1973); *Easton Utilities Commission v. AEC,* 424 F.2d 847, 853 (D.C.Cir.1970); *see also United States v. FMC,* 694 F.2d 793, 800 n. 25 (D.C.Cir.1982) (dictum); *Natural Resources Defense Council v. NRC,* 666 F.2d 595, 601 n. 42 (D.C.Cir.1981) (dictum); *cf. Outward Continental North Pacific Freight Conference v. FMC,* 385 F.2d 981, 982 n. 3 (D.C.Cir. 1967) (by implication). This approach has been embraced by the Fifth Circuit in interpreting § 2344, *see American Trucking Associations v. ICC,* 673 F.2d 82, 84 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983), as well as by other circuits in interpreting the identical language in the Bank Holding Company Act of 1956, 12 U.S.C. § 1848 (1976), *see Blackstone Valley National Bank v. Board of Governors of the Federal Reserve System,* 537 F.2d 1146, 1147 (1st Cir.1976); *First National Bank of St. Charles v. Board of Governors,* 509 F.2d 1004, 1008 (8th Cir. 1975).

Petitioner and·intervenor IBT concede that Simmons was not a party to the Commission's motor carrier docket and thus would be excluded by straightforward application of the *Gage* rule. They argue, however, that the rule should not be applied. Petitioner Simmons challenges *Gage* itself, urging that the "party aggrieved"

requirement be read the same way as the "person aggrieved" requirement of the Administrative Procedure Act, 5 U.S.C. § 702 (1976) (APA). Petitioner's Supplemental Brief on Motion to Dismiss at 5–6. He argues that the *Gage* rule creates a "club room" situation, which only serves to shelter agency rules from challenge.

We adhere to the principle of *Gage.* Even if it did not have the presumptive validity conferred by a decade of acceptance in this and other circuits, we would find it sound as an original matter. In drafting the special judicial review provisions of the Hobbs Act, Congress did not adopt the "person aggrieved" standard used in the general judicial review provision of the APA, even though the features of that legislation adopted four years earlier were prominently in mind, as reflected in both the House and the Senate Reports, H.R. Rep. No. 2122, 81st Cong., 2d Sess. 4, *reprinted in* 1950 U.S.Code Cong. & Ad.News 4303, 4306; S.Rep. No. 2618, 81st Cong., 2d Sess. 4 (1950). Rather, Congress chose the term "party aggrieved." To give meaning to that apparently intentional variation, we must read "party" as referring to a party before the agency, not a party to the judicial proceeding, as suggested by petitioner. This seems to us the only plausible reading, essentially establishing the same requirement with regard to direct appeals from

agency orders as exists with regard to appeals from district court decisions. The merits of that policy are for the Congress rather than us to determine. It is true that an agency order will not invariably be the result of structured "proceedings" in which at least some persons may acquire party status, but the Hobbs Act clearly assumed that to be the normal state of affairs.[1] Where it is not, we have other means to assure, where appropriate, both that the order will be directly appealable and that the petitioner will present its arguments first to the deciding agency.[2]

Simmons and IBT next argue that, even if correct in its application to other agencies, *Gage* should not be applied to the ICC, which was traditionally governed by other procedure and only brought under the Hobbs Act in 1975. *See* Act of January 2, 1975, Pub.L. No. 93–584, 88 Stat. 1917 (codified at scattered sections of 28 U.S.C.). They acknowledge that the language of the Hobbs Act provides no basis for giving the subsequently included ICC special status, and that this court, in *S.C. Loveland Co. v. United States,* 534 F.2d 958, 960 n. 1 (D.C. Cir.1976), relied upon *Gage* in refusing to reach the merits of an ICC order where the petitioner was not a party to the agency proceeding. They argue, however, that our pronouncement in *Loveland* was dictum,[3]

---

1. Both the House and the Senate Reports contained the following discussion:

   The proposed method of review has important advantages in simplicity and expedition over the present method. First, the submission of the cases upon the records made before the administrative agencies will avoid the making of two records, one before the agency and one before the court, and thus going over the same ground twice. Under the Administrative Procedure Act of June 11, 1946, the record before the agencies will be made in such a way that all questions for the determination of the courts on review, and the facts bearing upon them, will be presented and the rights of the parties will be fully protected. The bill has adequate provisions in section 7(b) and (c) for the taking of evidence either by the agency or in the district court, when for one reason or another that is necessary because a suitable hearing was not held prior to initiation of the proceeding in the court of appeals.

   H.R.Rep. No. 2122 at 4, 1950 U.S.Code at 4306; S.Rep. No. 2618 at 4.

2. *Cf. Pacific Gas and Electric Co. v. FPC,* 506 F.2d 33, 46 (D.C.Cir.1974) (suit under provision of Natural Gas Act permitting appeal by "party to a proceeding . . . aggrieved by an order," 15 U.S.C. § 717r(b) (1976)): "In light of [the] statement by the Commission [that its action was a policy statement and not a rule (so that rulemaking proceedings were not required), and that petitions to intervene were unnecessary], it was unnecessary to file futile petitions to intervene in order to become 'parties' to the proceeding. It was sufficient for petitioners to file petitions for rehearing."

3. In *Loveland,* although we refused to consider the merits of the ICC order, we in any event vacated it. We found that the Commission had been arbitrary in denying the petitioner's motion to intervene, and thus remanded for reconsideration "with Loveland given an opportunity to be heard." 534 F.2d at 963.

and did not consider prior agency practice and the legislative history of the Act of January 2, 1975. They assert that under prior law, the Urgent Deficiencies Appropriations Act of 1913, ch. 32, 38 Stat. 208, 219–20, the right to appeal ICC rulemakings was not limited to those who were parties before the agency, and that in placing review of ICC orders under the Hobbs Act, Congress did not intend to change this practice.

Giving the same statutory text a different meaning for one agency than for others would require the clearest evidence of such intent in the legislative history—if indeed even that would suffice. Simmons and IBT have presented no such evidence. They point to a letter in the legislative history of the 1975 Act from the Justice Department, which, in describing the then existing law, states that "anyone adversely affected may sue to annul the [ICC] order," Letter from Assistant Attorney General Rakestraw to Representative Rodino, Chairman of the House Committee on the Judiciary (Dec. 9, 1974), *reprinted in* H.R.Rep. No. 1569, 93d Cong., 1st Sess. 11, *reprinted in* 1974 U.S. CODE CONG. & AD.NEWS 7025, 7035, and which, after describing other procedural changes made by the bill, states "[i]n all other material respects, the existing procedure will continue under the new statute." H.R.Rep. No. 1569 at 12, 1974 U.S.CODE at 7036. It is far from clear that the Assistant Attorney General had specifically in mind the "person aggrieved"—"party aggrieved" distinction—much less that that subtlety was adequately conveyed to the Congress. In any event, we think that any support for petitioner's and intervenor's position contained elsewhere in the letter is more than counter-balanced by its statement that "litigants and judges would have the benefit of an established and familiar procedure with a sizable body of interpretive case law that has served efficiently and with general approval for nearly 20 years." H.R.Rep. No. 1569 at 13, 1974 U.S.CODE at 7037. This seems inconsistent with the notion that the already established *Gage* principle would not be applied to the ICC.

In our view, the legislative history of the Act of January 2, 1975, suggests, like its text, that in all respects not explicitly stated the ICC is to be treated like other agencies subject to the Hobbs Act. By merely including reference to the ICC in that portion of the Code adopted by the Hobbs Act (and, of course, repealing those portions of the Code providing a special procedure for the ICC), Congress intended to produce the following far-reaching procedural effects in the review of ICC orders: elimination of the three-judge district court; elimination of multiple suits challenging the same Commission order; limitation of the time for filing review to 60 days after entry of the order; filing of the record by the agency; authorization of review by a quorum of the court of appeals; and review of rules by the same tribunal with jurisdiction to review the agency's orders. H.R.Rep. No. 1569 at 4–6, 1974 U.S.CODE at 7028–29, S.Rep. No. 500, 93d Cong., 1st Sess. 3–4 (1973). There is no reason to believe that the (much less significant) "party aggrieved" requirement was intended to be excluded from this automatic effect. When Congress refused the ICC's specific requests for special treatment (elimination of venue in the D.C. Circuit and ICC control over its own litigation), it did so *by simply declining to alter or supplement the Hobbs Act provisions.* H.R.Rep. No. 1569 at 6–9, 1974 U.S.CODE at 7030–33; S.Rep. No. 500 at 4–7. In short, if Congress had desired to permit nonparty appeal of ICC orders, we think it would have said so.

Simmons' and IBT's argument on this point really amounts to little more than the assertion that such a significant change from prior practice would have been *explicitly noted in the legislative history* if it had been intended. We doubt the principle that the language of a statutory text can be ignored if not explicitly affirmed by legislative history as well; but even on its own terms the argument fails. As far as we are able to determine, the change was not (in the context of overall ICC practice) a significant one—if indeed it was a change at

all.[4] Despite our formal request that they do so, petitioner and intervenor have not provided us with data concerning the frequency of non-party appeals of ICC orders.

Simmons contends that even if the "party aggrieved" language is read to limit appeals to parties before the ICC, it should not bar his challenge to the motor carrier rule because he was a party to the railroad proceeding and because the two rulemakings were essentially one. He cites the example of the Penn Central litigation. *Erie-Lackawanna R.R. v. United States,* 279 F.Supp. 303 (S.D.N.Y.1967) (three-judge court); *Delaware and Hudson R.R. v. United States,* 279 F.Supp. 311 (S.D.N.Y.1967) (three-judge court); *Erie-Lackawanna R.R. v. United States,* 279 F.Supp. 313 (S.D.N.Y. 1967) (three-judge court); *Erie-Lackawanna R.R. v. United States,* 279 F.Supp. 316 (S.D.N.Y.1967) (three-judge court), *affirmed subject to modifications, Penn-Central Merger and N & W Inclusion Cases,* 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968). We disagree. The motor carrier and railroad dockets were both procedurally and substantially independent. They had separate notices, received different comments, and were concluded by separate rules promulgated on different dates.[5] The outcome of neither hinged upon the disposition of the other. As for the *Penn Central* litigation, it involved, to be sure, two separate ICC orders—but there the similarity to the present case ends. The validity of the one order (approval of the Penn Central merger) depended upon the adequacy of the other (the Norfolk and Western inclusion order) to protect affected railroads. That was probably irrelevant anyway, since the opinions cited by petitioner give no indication that any party to the challenge of either order on appeal was not a party to the corresponding proceeding before the ICC—much less contain any discussion of party status as an issue which occupied the courts' attention. To the extent the cases have anything to say about appellate treatment of ICC proceedings, it is the unexceptionable but in this case irrelevant proposition that, with respect to interdependent proceedings, "the public interest would be best served by their being handled by a single court of first instance, which is able to entertain both." *Erie-Lackawanna R.R. v. United States, supra,* 279 F.Supp. at 315. Finally, as should be evident from the citations to three-judge district court opinions, the *Penn Central* litigation was conducted before the Hobbs Act was extended to the ICC.

---

**4.** None of the cases that Simmons and IBT cite unqualifiedly holds that a non-party appeal was permissible under the general regime in effect when the 1975 Act was adopted. *ICC v. Diffenbaugh,* 222 U.S. 42, 49, 32 S.Ct. 22, 25, 56 L.Ed. 83 (1911), was a *de novo* equity suit brought before the enactment of the Urgent Deficiencies Appropriations Act. The statement in *The Chicago Junction Case,* 264 U.S. 258, 268, 44 S.Ct. 317, 320, 68 L.Ed. 667 (1924), was dictum, since the plaintiffs had been parties to the administrative proceeding. *L. Singer & Sons v. Union Pacific R.R.,* 311 U.S. 295, 61 S.Ct. 254, 85 L.Ed. 198 (1940), does not address who generally may seek review of Commission orders but only who may do so under the "any party in interest" standard of § 402(20) of the Transportation Act of 1920, ch. 91, 41 Stat. 456, 478, applicable to extensions of rail lines. The assertion of *Breswick & Co. v. Briggs,* 130 F.Supp. 953, 956 (S.D.N.Y. 1955), that nonparties could challenge ICC orders was unnecessary to that case, which was dismissed for plaintiffs' failure to exhaust administrative remedies; and the statement in

*Auclair v. United States,* 72 F.Supp. 160, 162 (D.Mass.1947), was dictum because one plaintiff had been a party to the administrative proceeding.

**5.** After argument and submission of this case, counsel for petitioner has brought to our attention a Federal Register notice in which the Commission has requested comments on a proposal to eliminate 20 schedules required to be filed under four annual report forms. Nine of these schedules pertain to the railroad annual report form, and one to the motor carrier annual report form, which were the subjects of the rulemakings here at issue. *See Elimination of Annual Report Schedules,* 48 Fed.Reg. 33773 (July 25, 1983). The fact that the Commission is now treating certain requirements of these forms (among others) in a single proceeding does not bear upon the question whether it treated other requirements in that fashion in the proceedings here at issue—except, perhaps, to demonstrate that when the Commission intends consolidation it says so.

### III

■ Intervenor IBT asserts that even if Simmons is dismissed on jurisdictional grounds, it may continue the lawsuit on its own. We must reject that assertion. An intervenor lacking an independent jurisdictional basis cannot maintain suit where the court lacked original subject matter jurisdiction. *See United States ex rel. Texas Portland Cement Co. v. McCord,* 233 U.S. 157, 163–64, 34 S.Ct. 550, 553, 58 L.Ed. 893 (1914); *Horn v. Eltra Corp.,* 686 F.2d 439 (6th Cir.1982). *See also* 7A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1917 at 584–85 (1972).

■ The cases cited by IBT do not dispute this fundamental rule. All but one of them involve either (1) continuation of a suit by an intervenor after the party *who originally provided valid subject matter jurisdiction* has left the case, *see United States Steel Corp. v. EPA,* 614 F.2d 843, 845 (3d Cir.1979), or (2) continuation of a suit by an intervenor *who himself provided such jurisdiction, see Atkins v. State Board of Education of North Carolina,* 418 F.2d 874, 876 (4th Cir.1969) (per curiam); *Fuller v. Volk,* 351 F.2d 323, 328 (3d Cir.1965); *Magdoff v. Saphin Television & Appliance, Inc.,* 228 F.2d 214, 215 (5th Cir.1955); and *Hunt Tool Co. v. Moore, Inc.,* 212 F.2d 685, 688 (5th Cir.1954). Neither situation obtains in the present case. Here we have an intervenor which, from the very inception of its participation, has been unable to confer subject matter jurisdiction, seeking to extend a suit brought by an original party who did not confer subject matter jurisdiction.

The only analogous case cited by IBT is the district court decision in *EEOC v. International Brotherhood of Electrical Workers,* 506 F.Supp. 480, 482–83 (D.Mass.1981). That permitted a private intervenor in a case brought under Title VII, 42 U.S.C. §§ 2000e to 2000e–17 (1976), who had not fulfilled the jurisdictional prerequisite of obtaining a "right-to-sue" letter from the EEOC to maintain a suit originally brought by the EEOC itself, which agency had failed to fulfill the jurisdictional prerequisite of first making an attempt at conciliation. The court reached the conclusion that the suit could be continued on the ground, uniquely applicable to that factual context, that the purpose of the "right-to-sue" letter requirement—avoidance of interference with the EEOC's conciliation efforts— would not be undermined since the EEOC had already brought suit against the defendant. If we were disposed to extend the rationale of that unique decision to the present case, we would at least have to satisfy ourselves that the purpose of the Hobbs Act's 60-day provision would not be frustrated by permitting IBT's intervention to sustain the suit. It seems to us that, quite to the contrary, such permission would enable a late-filing party, by appearing as an intervenor in an existing (but jurisdictionally defective) suit instead of filing independently, to perfect an appeal beyond the 60-day period which the statute prescribes.

IBT must be dismissed from this suit because the original party lacked a jurisdictional basis and because IBT has no jurisdictional basis of its own. The latter is true, we emphasize, not because the paper filed by IBT was labeled a petition to intervene rather than a petition to review but because, however styled, that document was not filed within the 60 days required by the Hobbs Act. "The 60 day period for seeking judicial review set forth in the Hobbs Act is jurisdictional in nature, and may not be enlarged or altered by the courts." *Natural Resources Defense Council v. NRC,* 666 F.2d 595, 602 (D.C.Cir.1981).

\*    \*    \*    \*    \*    \*

For the reasons stated, the petition is dismissed insofar as it seeks review of Docket No. 38568, *Revisions to Annual Motor Carrier Reporting Requirements.*

*So ordered.*