825 F.2d 1356
 18 Envtl. L. Rep. 20,020
 SIERRA CLUB; Southern California Alliance for Survival
Resources Center; and Tim Carpenter, Petitioners,
v.
UNITED STATES NUCLEAR REGULATORY COMMISSION; and the United
States of America, Respondents.
Southern California Edison Company and San Diego Gas &
Electric Company, Intervenors-Respondents.
 No. 85-7003.
 United States Court of Appeals,
Ninth Circuit.
 Argued Oct. 11, 1985.
Submitted Nov. 7, 1985.
Decided Aug. 21, 1987.
 
 Julie E. McDonald, San Francisco, Cal., for petitioners.
 Herzel H.E. Plaine, William H. Briggs, Jr., E. Leo Slaggie and Carolyn Jourdan, Washington, D.C., for respondents.
 David R. Pigott, San Francisco, Cal., for intervenors-respondents.
 Petition for Review of an Order of the Nuclear Regulatory Commission.
 Before SNEED and BRUNETTI, Circuit Judges, and HUPP,* District Judge.
 BRUNETTI, Circuit Judge:
 
 
 1
 * FACTS AND PROCEEDINGS BELOW
 
 
 2
 Petitioners challenge two orders of the Nuclear Regulatory Commission (NRC or Commission) relating to the operation of San Onofre Unit 1 (Unit 1 or SONGS 1), a nuclear reactor located on the California coast near Oceanside. The first of the challenged orders, dated November 21, 1984, permitted restart of Unit 1 which had been shut down since 1982 pursuant to Commission order, for upgrading. The second order, dated February 19, 1985, denied petitioners' request for stay and a hearing on the November 1984 order.
 
 
 3
 San Onofre Unit 1, operated by intervenor Southern California Edison (Edison), was first licensed for operation in 1967. The original seismic design basis for the plant required that safety related plant systems meet 0.5g Housner response spectra for "functional limits," based on the Commission's determination that the maximum earthquake that could be expected at the San Onofre site (the Safe Shutdown Earthquake or SSE) would generate ground motion of 0.5g.
 
 
 4
 In 1973, when Edison sought permission to construct two additional nuclear power plants at San Onofre (Units 2 and 3), it discovered an additional fault zone lying approximately five miles from Unit 1. The Commission realized it had underestimated the seismicity of the San Onofre site, and that the maximum expected earthquake could give rise to ground motion of 0.67g. Accordingly, Units 2 and 3 were by regulation required to meet a seismic design basis of 0.67g. Unit 1, however, remained for the moment as it was.
 
 
 5
 Subsequently, in 1973, Edison undertook to reevaluate and modify as necessary the capability of Unit 1 to withstand a 0.67g earthquake. Edison's analysis indicated that certain systems and structures had resistance capacities in excess of those required to meet 0.67g Housner Spectra; other components were modified during a plant outage in 1976-1977.
 
 
 6
 In 1977, the Commission began a Systematic Evaluation Program (SEP) to assess the design and operation of older operating nuclear power plants, as against current safety criteria, and to provide the basis for integrated and balanced plant backfitting decisions. As part of the SEP, the Commission required Edison to submit details of the seismic evaluation program for Unit 1. Submissions by Edison in 1982 revealed unexpected high stress values for certain equipment. NRC staff then became concerned whether Unit 1 met its original design basis of 0.5g. Following a meeting with Edison in May 1982, NRC staff determined that Edison needed to demonstrate that Unit 1 met its licensed design basis before the plant, then in an outage, could be permitted to restart.
 
 
 7
 Apparently the original design calculations and supporting materials for Unit 1 had been destroyed. However, Edison announced it would extend the outage until the plant had been upgraded to 0.67g, and thus demonstrate that the plant met its original design basis, and, presumably as well, assure that the plant could survive the maximum earthquake expected at the San Onofre site.
 
 
 8
 Edison completed a substantial part, but not all, of the upgrade work. At the request of Edison the NRC staff had by September 1984 decided that it would allow Unit 1 to resume operation. The staff sought advice from the Commission whether the Commission had to hold a public hearing before authorizing restart. The Commission instructed them that the August 1982 Order should be treated as a license suspension, rescission of which would not require a hearing. On November 5 and November 20, the Commission published notice of a public meeting in which it stated that it would discuss "the NRC Staff's technical basis for restart of San Onofre Nuclear Generating Station Unit 1." 49 Fed. Reg. 44253, Nov. 5, 1984; see also 49 Fed. Reg. 45284, Nov. 20, 1984. Those hearings were not conducted, apparently because the Commission concluded that the rescission of the license suspension was not a license amendment.
 
 
 9
 On November 21, 1984, the staff issued a "Contingent Rescission of Suspension," order allowing restart of Unit 1, provided that the remainder of the seismic reevaluation and upgrade would be completed by the end of the next refueling outage or that Edison would submit an adequate justification for an extension of time. Three days later, Unit 1 resumed operation.
 
 
 10
 On December 7, 1984, the petitioners filed with the Commission a request for (1) a hearing on the November 21 order,[1] (2) a stay of the November 21 order pending a hearing on the order, and (3) a request for expedited treatment--that its requests be heard no later than Wednesday, December 12, 1984.
 
 
 11
 On December 10, 1984, the Commission filed a "procedural order"[2] in which it denied petitioners' request for an immediate decision, but ordered that the briefing be expedited. The Commission directed the licensees and NRC staff to file responses to petitioners' request on or before December 14, 1984, and directed petitioners to file a reply to the response no later than December 18, 1984. The Commission did not rule on the request for a hearing or the request for a stay.[3]
 
 
 12
 On December 18, 1984, petitioners filed a lengthy reply to the licensee and NRC staff's opposition to the request for a hearing and a stay, and on December 20, the Commission granted the Edison's motion to extend the time for it to reply to January 9, 1985.
 
 
 13
 On January 3, 1985, the petitioners filed a petition with this court, seeking review of the November 21, 1984 and December 10, 1984 orders.
 
 
 14
 On February 19, 1985 the NRC entered an order denying both the request for hearing and the request for a stay.
 
 II
 JURISDICTION
 
 15
 We must determine whether we have jurisdiction to hear this petition. National Steel and Shipbuilding Co. v. Director of Workers Compensation Programs, 626 F.2d 106, 107 (9th Cir.1980). Citizens for a Safe Environment v. Atomic Energy Commission, 489 F.2d 1018 (3rd Cir.1973).
 
 
 16
 If we have jurisdiction in this case, it exists pursuant to 28 U.S.C. Sec. 2344. That section provides: "Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review that order in the court of appeals...." This sixty day period is jurisdictional, and may not be expanded by the courts. Chem-Haulers, Inc. v. United States, 536 F.2d 610 (9th Cir.1976). This jurisdictional bar also applies to petitions filed before a final order has been entered. Western Union Telegraph Co. v. Federal Communications Commission, 773 F.2d 375, 378 (D.C. Cir.1985). Because petitioners have not filed a petition for review of the Commission's February 19, 1985 Order denying the request for a hearing and a stay within this sixty day period, we must dismiss the petition for lack of jurisdiction.
 
 
 17
 A. The November 21, 1984 Order.
 
 
 18
 United States Code, section 2342 of Title 28 states:The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--
 
 
 19
 * * *
 
 
 20
 (4) all final orders of the Atomic Energy Commission made reviewable by section 2239 of title 42;
 
 
 21
 Jurisdiction is invoked by filing a petition as provided by section 2344 of this title.
 
 
 22
 28 U.S.C. Sec. 2342.
 
 
 23
 This statute directs us to review the NRC order to determine if it is a "final order[ ] ... made reviewable by section 2239 of title 42." Assuming that the November 21 Order is the kind of order that is "made reviewable by section 2239,"[4] we must then look to Sec. 2344 to determine who may invoke our jurisdiction, and how that review is to be sought. Section 2344 declares:
 
 
 24
 On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies. The action shall be against the United States.
 
 
 25
 28 U.S.C. Sec. 2344.
 
 
 26
 This statutory section allows "[a]ny party aggrieved by the final order ..." 28 U.S.C. Sec. 2344 (emphasis added), to seek direct appellate review. In Gage v. AEC, 479 F.2d 1214, 1218 (D.C. Cir.1973), the District of Columbia Court of Appeals concluded that it did not have jurisdiction where the petitioner had not been a party to the proceedings below. In Simmons v. Interstate Commerce Commission, 716 F.2d 40 (D.C. Cir.1983), the court reexamined its Gage analysis, and explained:
 
 
 27
 [i]n drafting the special judicial review provisions of the Hobbs Act, Congress did not adopt the "person aggrieved" standard used in the general judicial review provision of the APA, even though the features of that legislation adopted four years earlier were prominently in mind,.... Rather, Congress chose the term "party aggrieved." To give meaning to that apparently intentional variation, we must read "party" as referring to a party before the agency,....
 
 
 28
 Id. 716 F.2d at 43.
 
 
 29
 Every circuit that has considered the scope of the statutory language found in the Hobbs Act (28 U.S.C. Sec. 2344) has agreed with this analysis. Wales Transportation, Inc., v. Interstate Commerce Commission, 728 F.2d 774, 776 n. 1 (5th Cir.1984); American Trucking Associations, Inc., v. Interstate Commerce Commission, 673 F.2d 82, 84 (5th Cir.1982), cert. denied 460 U.S. 1022, 103 S.Ct. 1271, 75 L.Ed.2d 493. Moreover, circuits interpreting this identical language found in other legislative acts have interpreted it in this manner. See Blackstone National Bank v. Board of Governors of the Federal Reserve System, 537 F.2d 1146, 1147 (1st Cir.1976) (Bank Holding Company Act of 1956, 12 U.S.C. Sec. 1848); First National Bank of St. Charles v. Board of Governors, 509 F.2d 1004, 1008 (8th Cir.1975) (same); cf. North American Savings Association v. Federal Home Loan Bank Board, 755 F.2d 122, 125-26 (8th Cir.1985) ("parties aggrieved" construed more liberally to allow some forum to challenge agency proceeding).
 
 
 30
 We agree with this reading of the statute. Limiting our jurisdiction to the standard enumerated in 28 U.S.C. Sec. 2344 makes eminent sense. As the Gage court explained, "[t]he 'party' status requirement operates to preclude direct appellate court review without a record which at least has resulted from the fact-finders focus on the alternative regulatory provisions which petitioners propose." Gage, 479 F.2d at 1219.[5] Because petitioners were not parties to the proceeding culminating in the November 21 Order, they cannot seek direct appellate review of that order.[6] Gage, 479 F.2d at 1219. See also United States v. Federal Maritime Commission, 694 F.2d 793, 800 n. 25 (D.C. Cir.1982) (participation below mentioned as an "inflexible prerequisite to be a 'party aggrieved' under the Hobbs Act"); NRDC v. EPA, 804 F.2d 710, 715 (D.C. Cir.1986) (the statute "conditions a party's ability to obtain judicial review upon its participation in the rulemaking proceedings").
 
 
 31
 Moreover, it was not necessary to improperly petition from the November 21, 1984 Order so as to avoid some overarching "hardship," see Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); Western Oil & Gas v. United States Environmental Protection Agency, 633 F.2d 803, 807 (9th Cir.1980), because the petitioners had the opportunity to present their grievances to the Commission and could seek appellate review of that decision.
 
 
 32
 Pursuant to 42 U.S.C. Sec. 2201(p), the Commission has promulgated regulations governing hearing requests by Sec. 2239(a) interested parties. Section 2.105 of 10 C.F.R. provides that where the Commission determines that a hearing is not required by the Act "or this chapter," "[a]ny person whose interest may be affected by the proceeding may file a request for a hearing or a petition for leave to intervene if a hearing has already been requested." 10 C.F.R. Sec. 2.105(d)(2).
 
 
 33
 Moreover, 10 C.F.R. Sec. 2.206 entitled "Requests for action under this subpart," states that "[a]ny person may file a request ... to institute a proceeding to modify, suspend, or revoke a license, or for such other action as may be proper." Finally, 10 C.F.R. Sec. 2.714 provides for intervention in proceedings by "[a]ny person whose interest may be affected by a proceeding and who desires to participate as a party...." 10 C.F.R. Sec. 2.714(a)(1).
 
 
 34
 Petitioners' December 7, 1984 "Request for Hearing and Request for Stay" properly placed before the Commission its contentions regarding the Commission's failure to grant a hearing before it issued its order allowing restart. Accordingly, petitioners could have petitioned for a review of the Commission's final determination of those issues. Thus, we must determine whether petitioners filed a timely petition for review from the final order of the Commission.
 
 
 35
 B. The December 10, 1984 Order.
 
 
 36
 The Commission's December 10, 1984 order was not a final ruling on petitioners' "Request for Hearing and Request for Stay." The December 10 order was procedural in nature and merely denied the request for an immediate decision and ordered expedited briefing. Petitioners accepted that order and fully complied with it--filing an "extensive reply containing numerous factual allegations and extensive legal argument." NRC December 20, 1984 Order, p. 2. The Commission gave the opposing litigants until January 9, 1985 to respond to petitioners' allegations. The Commission properly took jurisdiction of the matter, and was in the process of deciding these issues when, without awaiting the Commission's decision, petitioners sought from this court a ruling on the identical issues it raised before the Commission.[7]
 
 
 37
 An order is final when the administrative agency has given its "last word on the matter." Western Oil & Gas v. United States Environmental Protection Agency, 633 F.2d 803, 807 (9th Cir.1980); see also Harrison v. PPG Industries, Inc., 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980) (last word); Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) (no further administrative proceedings contemplated); National Treasury Employees Union v. Federal Labor Relations Authority, 712 F.2d 669 (D.C. Cir.1983) (complete resolution).
 
 
 38
 "Judicial intervention in uncompleted administrative proceedings, absent a statutory mandate is strongly disfavored." Bakersfield City School District v. Boyer, 610 F.2d 621, 626 (9th Cir.1979). We will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely unnecessary. See Securities and Exchange Commission v. G.C. George Securities, Inc., 637 F.2d 685, 687 (9th Cir.1981); B.J. McAdams, Inc. v. Interstate Commerce Commission, 551 F.2d 1112, 1115 (8th Cir.1977). The December 10, 1984 Order was not a final order disposing of petitioners' grievances. The Commission did not make a final ruling on these issues until February 19, 1985 when it filed its "Denial of Request for Hearing and Request for Stay."
 
 
 39
 C. The February 19, 1985 Order Denying a Hearing and Stay.
 
 
 40
 The February 19, 1985 Order reviewed in detail the entire history of the San Onofre Unit 1 since its licensing in 1967. The Commission reviewed both the events precipitating the NRC August 11, 1982 shutdown order and the events and conditions leading to the Commission's November 21, 1984 "Contingent Rescission of Suspension" Order as to which petitioners seek a hearing. In its Order, the Commission made detailed findings of fact regarding both the operational safety of the plant and the Commission's justification for its rescission of the August 1982 suspension order.
 
 
 41
 Part II of the Order addresses the issues of whether the November 1984 order is a license amendment and whether, pursuant to 42 U.S.C. Sec. 2239(a), interested persons must be offered a hearing as a matter of law. Note 2 at page 5 of the Order specifically references the pending administrative proceedings and details the expedited scheduling for filing responses.
 
 
 42
 It is evident from a reading of the Commission's February 19, 1985 Order that the agency had not completed its processing of petitioners' request for a hearing until that Order was issued.
 
 
 43
 D. The January 3, 1985 Petition for Review.
 
 
 44
 The January 3, 1985 petition purported to appeal from both the November 21, 1984 and December 10, 1984 Orders. However, because petitioners cannot petition from an order to which they were not parties, the petition for review of the November 21 Order could not confer jurisdiction upon this court. Nor could the petition for review of the December 10 Order confer jurisdiction because that Order was not a final order within the meaning of 28 U.S.C. Sec. 2344. A final ruling on petitioner's December 7, 1984 "Request for Hearing and Request for Stay" was made on February 19, 1985, and petitioners could have sought appellate review from this court within sixty days pursuant to 28 U.S.C. Sec. 2344 but did not. The January 3, 1985 petition was fatally premature and could not confer jurisdiction upon this court. Western Union Telegraph Co. v. Federal Communications Commission, 773 F.2d 375, 378 (D.C. Cir.1985). We must dismiss the Petition for Review for lack of jurisdiction.
 
 III
 MOTION TO DISMISS AS MOOT
 
 45
 Intervenors have filed a Motion to Dismiss the Petition for Review as being moot. They argue that the San Onofre Unit 1 now meets the 0.67g seismic design standard urged by petitioners. The petition may very well be moot, however, because we have dismissed the petition for lack of jurisdiction, we do not reach the merits of intervenor's motion to dismiss. Accordingly, intervenor's motion is dismissed.
 
 
 46
 PETITION DISMISSED. INTERVENOR'S MOTION TO DISMISS AS MOOT IS DISMISSED.
 
 
 
 *
 Honorable Harry L. Hupp, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 The petitioner's "Request for a Hearing and Request for a Stay" argues:
 The action of the Commission in issuing the order of August 11, 1982 and November 21, 1984 constitutes an amendment of the SONGS 1 operating license, entitling petitioners to a hearing." December 7, 1984 petition pp. 1-2.
 * * *
 Petitioners are entitled to a prior hearing under Section 189(a) of the Atomic Energy Act on the issue whether the seismic safety requirements imposed by order on August 11, 1982 should be relaxed and whether the plant should be restarted. The issue was decided by the Commission November 21, 1984 in such a way as to exclude petitioners from the opportunity for a hearing. Id. at 5.
 * * *
 Because the opportunity for a prior hearing was not offered, the November 21, 1984 decision should be rescinded and the plant shut down immediately.
 Id. at 5. As we demonstrate, these are the identical claims Sierra Club has raised in this court.
 
 
 [2]
 In a December 20 order, the Commission referred to its December 10 order as a "procedural order" and granted Edison's motion to extend its reply time to January 9, 1985. Although we are not compelled to accept the Commission's characterization of its previous order, the December 10 order merely set a briefing schedule and denied the request for an immediate decision and is not a "final order" within the meaning of 28 U.S.C. Sec. 2344
 
 
 [3]
 The Commission's December 10 order stated:
 Petitioner's request for expedited treatment of their Request for Hearing and Request for Stay is hereby denied, in part, and granted, in part. It appears from the filings before us that petitioner's have had knowledge of the staff's challenged November 21 order for at least two weeks before they filed their December 7 Request with the Commission. Moreover, they have offered no reason why this matter must be resolved on or before December 12 to avoid any injury to them different in either kind of degree than that which they allegedly have suffered between November 21 and December 7. Nevertheless, the Commission will expedite briefing and its consideration of this matter in an effort to issue a ruling before the upcoming holiday absenses. [sic]
 The licensees and the NRC staff are hereby directed to file responses to petitioners' Request for Hearing and Request for Stay on or before the close of business, Friday, December 14, 1984,...." Petitioner's reply to those responses, if any, will be filed on or before the close of business Tuesday, December 18, 1984,...."
 
 
 [4]
 Petitioner urges us to conclude, contrary to the Commission's February Order, that the rescission of suspension order was a license amendment, and that the Commission therefore should have held a hearing before promulgating the restart order. We decline to reach this issue. We merely assume it for this discussion
 
 
 [5]
 It might be argued that the Gage Court was particularly concerned with situations where no record had been developed and the petitioner was challenging an order that promulgated rules, as opposed to challenging adjudicative proceedings as is the case here. However, as the Gage Court stated: "[t]he clear words of the statutes involved make no distinction between orders which promulgate rules and orders in adjudicative proceedings." Gage, 479 F.2d at 1218
 
 
 [6]
 It must be noted that the petitioners sought adjudication of their grievances in an administrative tribunal, the NRC. The NRC has expertise in this highly technical area, the NRC and litigants expended substantial resources in adjudicating the issues, and the petitioner appealed those issues before the NRC had an opportunity to pass on the controversy. Moreover, the time necessary for a final administrative ruling was minimal and the NRC proceedings involved the identical technical issues presented to this court
 
 
 [7]
 In the "Petition for Review" filed before this court, petitioners argue that "[t]he NRC issued the November 21, 1984 restart order without notice or opportunity for a public hearing on the significant safety issues involved." That petition further states: "Petitioners assert that the November 21, 1984, restart order was unlawful because it was issued without the prior hearing required by the Atomic Energy Act, 42 U.S.C. section 2239, and the NRC's regulations; ...." Petitioners also requested that this court "permanently enjoin the NRC from allowing operation of the San Onofre Nuclear Generating Unit One until the NRC has held a public hearing on the restart issue and otherwise complied with law."
 These are the identical issues raised and briefed before the Commission. See footnote # 1.